IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT GEISER, SHAUN HALLORAN, AVERY ACKER, CHRISTINA AQUILINO, and JOSHUA FRASER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE SALVATION ARMY, a New York nonprofit corporation,<br><br>Defendant. | Case No. 1:22-cv-01968-JMF<br><br>**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Robert Geiser, Shaun Halloran, Avery Acker, Christina Aquilino, and Joshua Fraser ("Plaintiffs"), by and through the undersigned attorneys, bring this action on behalf of themselves and the collective as defined below, against Defendant The Salvation Army ("Defendant") for failure to pay minimum wage as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Plaintiffs also bring this action on behalf of themselves and classes of similarly situated workers against Defendant for violations of select state labor laws. Plaintiffs Acker and Fraser additionally each bring this action on behalf of themselves against Defendant for failure to pay overtime as required by the FLSA and select state laws. Plaintiffs allege as follows:

### INTRODUCTION

1.      There are approximately 120 Salvation Army residential adult rehabilitation centers and adult rehabilitation programs ("ARCs") across the United States,

approximately 36 of which are located in the Salvation Army Eastern Territory and operated by Defendant.  Thousands of vulnerable individuals ("ARC workers")—people who are unhoused or marginally housed, who are very poor, who have drug or alcohol addiction problems, who are entangled in the criminal justice system, and/or who suffer from mental illness—enroll in Defendant's ARCs annually.

2.     The cornerstone of all of Defendant's ARCs is that all ARC workers must perform at least forty hours per week, and often more, of difficult work for Defendant. Most of the work is performed in direct support of Defendant's thrift stores, retail establishments that are in direct competition with other such enterprises selling used goods.  Typical tasks performed by the ARC workers include sorting donated clothing, hanging clothing on hangers, putting price tags on the clothing and other goods, sorting and cleaning bric-a-brac, testing electronics, rehabilitating furniture, and loading and unloading trucks with donated goods.  All the work performed is suffered or permitted by Defendant and is under the direction and control of employees of Defendant.

3.     In exchange for the ARC workers' full-time labor, Defendant pays wages to the ARC workers that start as low as $5 per week and may increase each week up to a maximum of no more than approximately $30 per week, well below the minimum wage required by the FLSA and applicable state laws.  As further compensation for the ARC workers' labor, Defendant provides ARC workers with dorm-like sleeping arrangements, board in the form of food that is at least in part donated by third parties or purchased with ARC workers' SNAP benefits, clothing that has been donated and would otherwise be sold in Defendant's thrift stores, and rudimentary rehabilitative services, the value of

which is far below the required minimum wage.  ARC workers who complete the program often leave the ARC penniless and jobless, unable to survive economically in their communities.

4.      People applying to the ARCs who are unable to perform work for Defendant are ineligible to enroll in the ARCs.  Defendant typically expels from the program any ARC workers who, after being admitted to the program, become unable or unwilling to work, including if they become unable to work as a result of an injury sustained performing work for Defendant or because they fall ill.

5.      If ARC workers did not provide labor for Defendant, Defendant would have to pay other workers from the community to complete the tasks it assigns to ARC workers.  Defendant employs other individuals to work side-by-side with ARC workers performing substantially the same duties for wages in compliance with the FLSA and applicable state requirements.

6.      Because ARC workers are suffered or permitted to perform tasks for Defendant's benefit, under the direction and control of Defendant's employees, and with the expectation of receiving compensation from Defendant for their labor, Plaintiffs and all others similarly situated are Defendant's employees under the FLSA and applicable state laws.  Nevertheless, Defendant has and at all relevant times has had a uniform policy or practice of failing to treat its ARC workers as employees.  It is well established under the FLSA and applicable state laws that absent a specific exemption workers cannot waive their right to be compensated at the rates set forth by law.  As a result, Defendant has and at all relevant times has had a policy or practice, in violation of the

FLSA and applicable state laws, of failing to pay Plaintiffs and all those similarly situated workers minimum wage for all hours worked.  Similarly, Defendant has and at all relevant times has had a policy or practice, in violation of the applicable state laws, of failing to provide wage statements to Plaintiffs and all those similarly situated workers. Defendant also failed to pay overtime compensation to Plaintiffs Acker and Fraser for all hours worked in excess of forty hours per week, in violation of the FLSA and applicable state laws.  These systemic violations have been, and are, occurring despite Defendant recently publicly acknowledging the importance of the minimum wage and overtime protections of the FLSA, particularly for the working poor, and stating its intention to comply with the minimum wage and overtime provisions of the FLSA for its lay employees.

7.      Defendant at all relevant times knew that Plaintiffs and all those similarly situated workers were suffered and permitted to work for Defendant but were not paid wages at the required rate for their work, and willfully and intentionally engaged in a widespread policy or practice of failing and refusing to fully compensate Plaintiffs and all those similarly situated workers.  *See* 29 U.S.C. § 255.

8.      Plaintiffs bring this action for violations of the FLSA as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of the following proposed collective (the "FLSA Collective"):

> All persons who, between March 9, 2019 and the date of final judgment:
> (1) are, were, or will be enrolled in any Salvation Army Adult
> Rehabilitation Center or other programs operated by Defendant with similar
> work requirements ("ARC Program")—including, but not limited to,
> Alcohol Rehabilitation Programs, Adult Rehabilitation Programs, and
> Corps Salvage and Rehabilitation Centers; (2) did not or will not enroll in

the ARC Program to comply with a court order or condition of probation or parole; (3) perform, performed, or will perform work for Defendant; and (4) are, were, or will be paid less than the applicable federal minimum wage.

9.      Plaintiffs Geiser and Halloran, who enrolled in ARCs in New York; Plaintiffs Acker and Aquilino, who enrolled in ARCs in Pennsylvania; and Plaintiff Fraser, who enrolled in an ARC in Maine, also bring this action on behalf of themselves and the classes defined below for violations of those states' applicable labor laws. *See infra* ¶ 60.

10.     Plaintiffs Acker and Fraser each bring this action on behalf of themselves individually for failure to pay overtime as required by the FLSA and applicable state laws.

11.     Defendant is liable for its violations of federal and applicable state laws.

12.     Accordingly, as set forth below, Plaintiffs seek unpaid compensation, penalties, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the FLSA and applicable state laws on behalf of themselves, others similarly situated, and the state classes they seek to represent.

## JURISDICTION

13.     This Court has jurisdiction over the FLSA claims in Counts 1 and 9 pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

14.     This Court has general jurisdiction over Defendant because Defendant is incorporated and has its principal place of business in West Nyack, New York.

15.     This Court has jurisdiction over Counts 2-8 and 10-11 pursuant to 28 U.S.C. § 1367(a), as Plaintiffs' state law individual and class claims form part of the same case or controversy as Plaintiffs' FLSA claims.

16.     The action is properly before this Court and this Court has jurisdiction over Counts 2-8 pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  This is a civil class action that was commenced after February 18, 2005, in which the matter in controversy as to Counts 2-8 exceeds $5,000,000, exclusive of interest and costs. Plaintiffs Halloran, Acker, Aquilino, and Fraser are citizens of New Jersey, South Carolina, New Jersey, and Maine respectively, and thus at least one member of the classes bringing Counts 2-8 is a citizen of a different state than Defendant.  Plaintiffs Geiser, Halloran, Acker, Aquilino, and Fraser bring Counts 2-8 on behalf of statewide classes which, on information and belief, consist of more than 100 class members in the aggregate.  Upon information and belief, none of the exemptions to jurisdiction found in 28 U.S.C. § 1332(d)(3), (d)(4)(A), or (d)(4)(B) apply to this action.

## VENUE AND INTRADISTRICT ASSIGNMENT

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.  Accordingly, Defendant conducted and continues to conduct substantial business in this District, a substantial part of the transactions at issue took place in this District, and Defendant's liability arose, in part, in this District.

18.     This case should be designated for assignment to the Manhattan courthouse because none of the claims arose out of the Northern Counties in this district, because Plaintiff Geiser currently resides in Bronx County, and because Plaintiff Halloran's claims arise out of his work as a participant in an ARC in Manhattan.

# PARTIES

## A.   Plaintiffs

19.   Plaintiff Robert Geiser is an adult resident of New York. Plaintiff Geiser entered the Salvation Army ARC in Hempstead, New York in November 2017 and completed the program in May 2019.  During the entire period that he was a participant in the ARC, Plaintiff Geiser was required to work for Defendant, performing tasks that include sorting donated clothes and placing them on a hanger; working as a security guard ensuring the dormitory, trucks, warehouse, and store were secure; working at the front reception desk sorting mail, answering the phone, providing forms to potential residents, and scheduling intake interviews; and working as a truck dispatcher, sending trucks to pick up donations and deliver the donations to the warehouse or store.  He worked at least eight hours a day, five days a week, in each job he performed.  Plaintiff Geiser was never paid the FLSA required minimum wage, or the minimum wage required by state law.  Instead, his weekly wages started at $5 per week and incrementally increased until he received wages of $20 per week, at which point wage increases stopped.  Defendant did not, at the time of Plaintiff Geiser's hiring and for the duration of his employment, provide Plaintiff Geiser with notice of the information required under New York law.  Defendant also failed to provide Plaintiff Geiser with wage statements as required under New York law.  Plaintiff Geiser was suffered and permitted to work by Defendant, and his work was under the direction and control of Defendant.  Plaintiff Geiser qualified as an employee of Defendant under the FLSA, 29 U.S.C. § 203(e)(1), and New York Labor Law §§ 190 and 651.

20.     Plaintiff Shaun Halloran is an adult resident of New Jersey.  Plaintiff Halloran entered a Salvation Army ARC in New York, New York in approximately September 2019 and left the program in approximately February 2020.  During the entire period that he was a participant in this ARC, Plaintiff Halloran was required to work for Defendant, performing tasks that include sorting and hanging donated clothing, and loading and unloading trucks with donated items.  He worked at least eight hours a day, five days a week.  Plaintiff Halloran was never paid minimum wage for his labor.  Instead, his weekly wages started at $7 per week and incrementally increased until he received wages of about $24 per week.  Defendant did not, at the time of Plaintiff Halloran's hiring and for the duration of his employment, provide Plaintiff Halloran with notice of the information required under New York law.  Defendant also failed to provide Plaintiff Halloran with wage statements as required under New York law.  Plaintiff Halloran was suffered and permitted to work by Defendant, and his work was under the direction and control of Defendant.  Plaintiff Halloran qualified as an employee of Defendant under the FLSA, 29 U.S.C. § 203(e)(1), and New York Labor Law §§ 190 and 651.

21.     Plaintiff Avery Acker is an adult resident of South Carolina.  Plaintiff Acker enrolled in the Salvation Army ARC in Altoona, Pennsylvania in April 2021.  He left the program in Altoona in August 2021 and enrolled in the Salvation Army ARC in Scranton, Pennsylvania in August 2021.  He completed the program in February 2022.  During the entire period that he was enrolled at the ARCs, Plaintiff Acker was required to work for Defendant, performing tasks that included sorting, hanging, and folding

donated, and often dirty, clothes and lifting and moving heavy boxes.  At the ARC in Altoona, Plaintiff Acker also worked in kitchen for the ARC program where he washed dishes, prepared the food, and cleaned up the kitchen after.  He worked at least eight hours per day, Monday through Friday.  In addition, in Altoona, he would have to work on some Saturdays and Sundays and in Scranton, he would also have to work on Saturdays.  In the warehouse, Plaintiff Acker regularly worked 7:30 a.m. to 4:00 p.m., and in the ARC kitchen, Plaintiff Acker would sometimes start working as early at 4:00 a.m. and not finish until as late as 9:00 p.m.  Plaintiff Acker did not receive minimum or overtime wages for his labor.  Rather, Defendant provided him with a weekly payment which started at $6 per week and increased by $1 each week to a maximum payment of $25 per week.  Plaintiff Acker was suffered and permitted to work by Defendant, and his work was under the direction and control of Defendant.  Plaintiff Acker qualified as an employee of Defendant under the FLSA, 29 U.S.C. § 203(e)(1) and the Pennsylvania Minimum Wage Act, 43 Pa. Stat. Ann. § 333.103.

22.     Plaintiff Christina Aquilino is an adult resident of New Jersey.  Plaintiff Aquilino entered the Salvation Army ARC in Roxborough, Pennsylvania in July 2019 and completed the program in February 2020.  During the entire period that she was a participant in the ARC, Plaintiff Aquilino was required to work for Defendant, performing tasks that include sorting donated clothing, lifting and moving heavy boxes in the warehouse, unloading donations from vehicles, and helping load purchased goods into vehicles for consumers.  Her regular work schedule was 7:30 a.m. to 4:30 p.m., Monday through Friday.  Plaintiff Aquilino was never paid minimum wage for her

labor.  Instead, her weekly wages started around $5 per week and incrementally increased until she received wages of around $25 per week.  Plaintiff Aquilino was suffered and permitted to work by Defendant, and her work was under the direction and control of Defendant.  Plaintiff Aquilino qualified as an employee of Defendant under the FLSA, 29 U.S.C. § 203(e)(1) and the Pennsylvania Minimum Wage Act, 43 Pa. Stat. Ann. § 333.103.

23.     Plaintiff Joshua Fraser is an adult resident of Maine.  Plaintiff Fraser entered the Salvation Army ARC in Portland, Maine in October 2019 and left the program in December 2019.  During the entire period that he was a participant in the ARC, Plaintiff Fraser was required to work for Defendant, performing tasks that included sorting and hanging donated clothing, and loading and unloading trucks with donated items.  He worked at least eight hours a day, Monday through Friday, and occasionally worked weekends.  Plaintiff Fraser did not receive minimum or overtime wages for his labor.  Instead, his weekly wages started at $7 per week and incrementally increased until he received wages of about $16 per week.  Plaintiff Fraser was suffered and permitted to work by Defendant, and his work was under the direction and control of Defendant. Plaintiff Fraser qualified as an employee of Defendant under the FLSA and 26 M.R.S. §§ 621-A, 629, and 663.

**B.     Defendant**

24.     Defendant is a 501(c)(3) organization incorporated in New York, with its headquarters located at 440 West Nyack Road, West Nyack, New York 10994.

25.     The Salvation Army National Corporation conducts its operations in the United States through four administrative territories: Eastern, Southern, Central, and

Western.  Each territory is separately incorporated, has its own territorial commander serving as leader of the territory, and oversees programs and activities within its own designated geographic areas.  Defendant is responsible for the Eastern Territory, which consists of Connecticut, Delaware, Northeast Kentucky, Maine, Massachusetts, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Vermont, Puerto Rico, and the Virgin Islands.

26.    Defendant is, and at all relevant times has been, an employer within the meaning of 29 U.S.C. §§ 203(d) and 203(g), as well as applicable state laws.

27.    Defendant is, and at all relevant times has been, an enterprise within the meaning of 29 U.S.C. § 203(r)(1).

28.    At all relevant times, Plaintiffs were Defendant's employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(s)(1), 206, and 207.

## FACTUAL ALLEGATIONS

29.    Thousands of individuals enroll in Defendant's ARC programs annually, often because they are poor, unhoused, sick, suffering from a substance use disorder, or simply have nowhere else to go.

30.    Defendant requires that, to enroll in and remain at an ARC, and in exchange for room, board, clothing, rehabilitative services, and nominal wages—the value of which is far below the required minimum wage—all ARC workers must perform assigned tasks for Defendant for at least forty hours per week.  ARC workers understand and expect that, in exchange for their labor, The Salvation Army will provide them with

those benefits and compensation.  The Salvation Army touts the work requirement on its website, explaining that a person cannot enroll in an ARC program if he or she is not "[a]ble to perform a work therapy assignment for eight hours a day."

31.     Defendant generally requires every ARC worker to complete an intake with Defendant before enrolling in the program.  Among other things, applicants may be asked to describe their work histories and any health or physical problems which might keep them from working.  Applicants must be able to work at least five days or forty hours per week.

32.     Once enrolled in the program, ARC workers, including Plaintiffs, perform tasks that are often physically grueling and sometimes dangerous.  Such tasks include loading, unloading, and hauling heavy furniture, home appliances, and other donations from trucks; sorting through mountains of donated clothing and other goods; cleaning, testing, and repairing donated goods; operating heavy machinery such as balers in large warehouses; driving or traveling on trucks to pick up and drop off donated goods; and cleaning, organizing, and maintaining Defendant's thrift stores.

33.     The jobs performed by ARC workers are not in furtherance of any educational program and do not primarily further ARC workers' rehabilitation.  In fact, Defendant requires ARC workers to work so many hours during the week that it leaves little time for the ARC workers to focus on rehabilitation.  Moreover, Defendant does not provide ARC workers with job or skills training, nor any other training that would further ARC workers' employment once they leave the program.  Some ARC workers enter the ARCs with skilled training and experience and long histories of gainful employment.

Defendant does not provide any meaningful job placement assistance for ARC workers leaving the ARC.

34.    The jobs performed by ARC workers, including the jobs performed by Plaintiffs, directly, substantially, and primarily benefit and are essential to the operation of Defendant's multi-million dollar commercial thrift store operations.  The ARC workers, including Plaintiffs, perform tasks assigned to them by Defendant and are under Defendant's direction and control while performing work.  Defendant's thrift stores, retail establishments that compete for business with other commercial enterprises selling used goods, could not operate without the labor of ARC workers.  The ARC workers' labor for Defendant enables Defendant to sell goods in commerce at Defendant's thrift stores, which compete for customers with other thrift stores that pay minimum wage or more.

35.    As of 2020, there were more than 1000 Salvation Army branded thrift stores across the country.  Defendant's thrift stores generate millions of dollars in annual revenue for Defendant.  In 2019, The Salvation Army National Corporation reportedly generated $598,449,000 in revenue from sales at these thrift stores.

36.    Defendant also benefits from the jobs it requires some ARC workers to perform inside the ARCs themselves, like cleaning the common areas, kitchen work and menial administrative and clerical tasks.

37.    If Defendant did not receive the benefit of ARC workers' labor, Defendant would have to pay workers in compliance with the FLSA and state minimum wage laws to perform this work.  Some of Defendant's advertisements for paid positions at its ARCs

describe job responsibilities, like sorting donations, tagging merchandise, and cleaning furniture donations, that are substantially the same as jobs performed by ARC workers. Indeed, Defendant employs other individuals from the community to work side-by-side with ARC workers performing substantially the same duties.  Unlike ARC workers, Defendant pays these other employees market-rate wages that meet or exceed federal and state minimum wage requirements.

38.    Defendant controls all aspects of ARC workers' job assignments, including, but not limited to, the task each ARC worker must perform; the days of the week on which ARC workers must perform assigned tasks; the start and end time for shifts; the work location; the job duties for each position; the manner in which ARC workers are required to perform job duties; standards of performance; the rate of pay (or lack thereof) for each position; the training, if any, provided to ARC workers regarding the work they are required to perform; and all other working conditions.  Jobs are assigned and overseen by supervisors who are Defendant's fully paid employees.

39.    An ARC worker's refusal or inability to work is grounds for Defendant to expel the worker from the ARC, even if the worker follows all other program rules. Defendant routinely expels workers from its ARCs if they become unable to perform assigned tasks because of illness or even injury suffered while performing tasks for Defendant.

40.    ARC workers who miss scheduled shifts, even for legitimate reasons like illness or injury, typically are required to make up those hours at a later date.

41.     The policies or practices for the ARCs provide that if ARC workers perform their assigned jobs for Defendant and abide by other program rules, they will be provided with food, clothing, shelter, rehabilitative services, and wages—sometimes in the form of "canteen cards" redeemable only at Defendant's canteen and a meager amount of money, paid on an escalating scale.  Defendant typically pays ARC workers approximately $5 per week for their work when they begin, with their wages to increase by $1 each week, before topping out at a maximum of no more than approximately $30 per week as they participate in Defendant's work program.  Defendant does not provide ARC workers with wage statements.  The policies or practices for the ARCs also provide that if ARC workers are unable or unwilling to perform assigned tasks, they will not receive these benefits as they will become ineligible to remain in the program.

42.     Defendant required Plaintiffs Acker and Fraser to work more than forty hours per week.  Yet Defendant did not pay them overtime wages.

43.     Notwithstanding the significant benefits Defendant derives from jobs performed by ARC workers, and the ARC workers' expectation that they will be compensated for their labor, Defendant maintains, and for many years has maintained, a uniform policy of unlawfully failing to treat ARC workers as employees or pay them minimum wages.

44.     The policies or practices described herein are consistent across every ARC operated by Defendant.  Every ARC worker must perform their assigned tasks for at least forty hours per week as a condition of remaining in the program.  Defendant does not pay any ARC worker minimum wage for all hours worked.

45.     Defendant permits ARC workers to select for their personal use a limited number of clothing items from those donated to the Salvation Army.  ARC workers must live on-site, typically in assigned sleeping areas and dormitory settings with shared showers, toilets, and sinks.  While enrolled in an ARC program, ARC workers are reliant on Defendant for food and shelter.

46.     Although workers typically are not charged a fee to participate in the ARC programs, Defendant requires them to relinquish to Defendant SNAP benefits they are already receiving or to sign up for SNAP benefits if they are eligible and have not already enrolled and then turn over the benefits to Defendant.

47.     ARC workers generally stop performing jobs for Defendant in ARC programs when they complete Defendant's program (i.e., "graduate") (typically after 180 days), leave voluntarily, or are expelled.  The ARCs provide no meaningful job placement services for those leaving the program.  Upon information and belief, only a small percentage of workers successfully complete Defendant's ARC programs.  Many leave or are expelled from the program prior to completion.  Some are required to stay longer than 180 days as discipline for supposed infractions of ARC rules.

48.     At all relevant times, Defendant was aware that ARC workers were paid no more than a few dollars per week despite working at least forty hours, and frequently more.

49.     Defendant willfully denied Plaintiffs and all those similarly situated minimum wages for all time worked.

50.     By failing to treat Plaintiffs and all those similarly situated as employees and failing to pay minimum wage, Defendant has sought to avoid various duties and obligations owed to employees under the FLSA, as well as the labor laws of New York, Pennsylvania, and Maine.  Through this action, Plaintiffs challenge Defendant's unlawful policy of failing to satisfy its duty to pay proper wages to ARC workers as well as comply with other provisions of select state labor laws.

## COLLECTIVE ACTION ALLEGATIONS

51.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the proposed FLSA Collective, defined as:

> All persons who, between March 9, 2019 and the date of final judgment: (1) are, were, or will be enrolled in any Salvation Army Adult Rehabilitation Center or other programs operated by Defendant with similar work requirements ("ARC Program")—including, but not limited to, Alcohol Rehabilitation Programs, Adult Rehabilitation Programs, and Corps Salvage and Rehabilitation Centers; (2) did not or will not enroll in the ARC Program to comply with a court order or condition of probation or parole; (3) perform, performed, or will perform work for Defendant; and (4) are, were, or will be paid less than the applicable federal minimum wage.

52.     Plaintiffs and all members of the proposed FLSA Collective are similarly situated.  They were subject to substantially similar job requirements, pay provisions, and a common policy or practice that required or permitted them to perform work for the benefit and at the direction of Defendant without receiving proper wages.

53.     Plaintiffs estimate that there are thousands of similarly situated current and former workers in Defendant's ARC programs whose rights to federal minimum wages are, were, and will be violated by Defendant.

54.     Defendant knew that Plaintiffs and the proposed FLSA Collective performed work that required them to be compensated at the federal minimum wage. Defendant willfully and intentionally failed to properly compensate these individuals as required by the FLSA.

55.     Defendant is liable under the FLSA for failing to properly compensate Plaintiffs and the proposed FLSA Collective, and as such, notice should be sent to the FLSA Collective.  There are numerous similarly situated current and former workers in Defendant's ARCs who have been denied proper minimum wage in violation of the FLSA who would benefit from the issuance of Court-supervised notice of this lawsuit and the opportunity to join.

56.     Those similarly-situated employees are known to Defendant and are readily identifiable through its records.

57.     Plaintiffs and members of the proposed FLSA Collective should therefore be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b).

58.     A collective action will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and the members of the proposed FLSA Collective.

59.     Plaintiffs request that they be permitted to serve as representatives for those who consent to participate in this action and that the action be granted collective action status pursuant to 29 U.S.C. § 216(b).

## RULE 23 CLASS ACTION ALLEGATIONS

60.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek to certify the following classes:

a.    New York Class:  Plaintiffs Halloran and Geiser seek to bring

Counts 2-4 below on behalf of themselves and all persons who, between March 9, 2016

and the date of final judgment: (1) are, were, or will be enrolled in any Salvation Army

Adult Rehabilitation Center or other programs operated by Defendant with similar work

requirements in New York ("New York ARC Program")—including, but not limited to,

Alcohol Rehabilitation Programs, Adult Rehabilitation Programs, and Corps Salvage and

Rehabilitation Centers; (2) did not or will not enroll in the New York ARC Program to

comply with a court order or condition of probation or parole; (3) perform, performed, or

will perform work for Defendant; and (4) were, are, or will be paid less than the

applicable New York minimum wage.

b.    Pennsylvania Class:  Plaintiffs Acker and Aquilino seek to bring

Count 5 below on behalf of themselves and all persons who, between March 9, 2019 and

the date of final judgment: (1) are, were, or will be enrolled in any Salvation Army Adult

Rehabilitation Center or other programs operated by Defendant with similar work

requirements in Pennsylvania ("Pennsylvania ARC Program")—including, but not

limited to, Alcohol Rehabilitation Programs, Adult Rehabilitation Programs, and Corps

Salvage and Rehabilitation Centers; (2) did not or will not enroll in the Pennsylvania

ARC Program to comply with a court order or condition of probation or parole; (3)

perform, performed, or will perform work for Defendant; and (4) were, are, or will be

paid less than the applicable Pennsylvania minimum wage.

c.    Maine Class:  Plaintiff Fraser seeks to bring Counts 6-8 below on

behalf of himself and all persons who, between March 9, 2016 and the date of final

judgment: (1) are, were, or will be enrolled in any Salvation Army Adult Rehabilitation Center or other programs operated by Defendant with similar work requirements in NeMaine ("Maine ARC Program")—including, but not limited to, Alcohol Rehabilitation Programs, Adult Rehabilitation Programs, and Corps Salvage and Rehabilitation Centers; (2) did not or will not enroll in the Maine ARC Program to comply with a court order or condition of probation or parole; (3) perform, performed, or will perform work for Defendant; and (4) were, are, or will be paid less than the applicable Maine minimum wage.

61.     The claims of the New York Class, Pennsylvania Class, and Maine Class (the "Classes") herein have been brought and may properly be maintained as class actions under Rule 23 of the Federal Rules of Civil Procedure because (1) the Classes are each so numerous that joinder of all class members is impracticable; (2) there are questions of law and or fact common to each of the Classes; (3) the claims of the representatives of each of the Classes are typical of the claims of the Classes they seek to represent; and (4) the proposed representatives of the Classes and their counsel will fairly and adequately protect the interests of the Classes.  In addition, the questions of law or fact that are common to each of the Classes predominate over any questions affecting only individual class members and a class action is superior to other available means for fairly and efficiently adjudicating the controversy.

62.     Numerosity:  Although the precise number of Class members in each Class is unknown and can only be determined through appropriate discovery, each of the Classes, as defined herein, is so numerous that joinder would be impracticable.  Plaintiffs

are informed and believe, and based on such information and belief, allege that that there are likely hundreds, if not thousands, of other members of each of the Classes.  The names and addresses of other members of the Classes are available to Defendant.  Notice can be provided to members of the Classes via first class mail or email using techniques and a form of notice similar to those customarily used in class action lawsuits of this nature.

63.   <u>Commonality and Predominance of Common Questions</u>:  Plaintiffs and the members of the Classes they seek to represent have all be harmed by Defendant's failure to compensate ARC workers at the applicable minimum wage on an hourly basis and for all hours worked.  Accordingly, there is a well-defined commonality of interest in the questions of law and fact applicable to Plaintiffs and the Classes they seek to represent.  These questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes.  These common questions of law and fact include, without limitation:

a.   Whether Plaintiffs Geiser and Halloran and members of the New York Class were employees of Defendant under New York law;

b.   Whether Defendant failed to pay Plaintiffs Geiser and Halloran and the members of the New York Class the applicable New York minimum wage for all hours worked;

c.   Whether Defendants failed, at the time of hiring and thereafter, to provide Plaintiffs Geiser and Halloran and members of the New York Class with notice of the information required by New York law;

d.      Whether Defendant failed to provide Plaintiffs Geiser and Halloran and the members of the New York Class with accurate wage statements in accordance with New York law;

e.      Whether Defendant violated New York Labor Law §§ 191 and 651 by failing to pay Plaintiffs Geiser and Halloran and the members of the New York Class the applicable New York minimum wage;

f.      Whether Defendant violated New York Labor Law § 195 by failing to provide, at the time of hiring, Plaintiffs Geiser and Halloran and the members of the New York Class with notice of the information required by New York law;

g.      Whether Defendant violated New York Labor Law § 195 by failing to provide Plaintiffs Geiser and Halloran and the members of the New York Class with accurate wage statements;

h.      Whether Plaintiffs Acker and Aquilino and members of the Pennsylvania Class were employees of Defendant under Pennsylvania law;

i.      Whether Defendant failed to pay Plaintiffs Acker and Aquilino and the members of the Pennsylvania Class the applicable Pennsylvania minimum wage for all hours worked;

j.      Whether Defendant violated the Pennsylvania Minimum Wage Law by failing to pay Plaintiffs Acker and Aquilino and members of the Pennsylvania Class the applicable Pennsylvania minimum wage;

k.      Whether Plaintiff Fraser and members of the Maine Class were employees of Defendant under Maine law;

l.      Whether Defendant failed to pay Plaintiff Fraser and the members of the Maine Class the applicable Maine minimum wage for all hours worked;

m.      Whether Defendant violated Maine Rev. Stat. tit. 26, §§ 621-A, 629, and 663 by failing to pay Plaintiff Fraser and the members of the Maine Class the applicable Maine minimum wage;

n.      The proper measure of damages, restitution, interest, and penalties owed to Plaintiffs and the Classes.

64.      Typicality:  The Plaintiffs' claims are typical of the claims of members of the Classes they are seeking to represent. Defendant's common course of unlawful conduct has caused Plaintiffs and members of the Classes to sustain the same or similar injuries and damages.  All members of the Classes were subject to the same compensation policies or practices, through which they were not paid minimum wage. Defendant's policies or practices affected all members of the Classes similarly, and Defendant benefited from the same type of wrongful acts against each class member. Plaintiffs' claims are thereby typical of and co-extensive with the claims of members of the Classes, and the relief sought is typical of the relief that could be sought by each member of the Classes in separate actions.

65.      Adequacy of Representation:  Plaintiffs are members of the Classes they seek to represent, do not have any conflicts of interest with the Classes they seek to represent, and will prosecute the case vigorously on behalf of the Classes they seek to represent.  Plaintiffs will fairly and adequately represent and protect the interests of the Classes they seek to represent.  Counsel for Plaintiffs are competent and experienced in

litigating large, complex employment class actions, including large wage and hour class actions.

66.    Superiority:  Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and members of the proposed Classes.  Individual joinder of all class members is impracticable.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individual actions engender.  The expense and burden of individual litigation by members of the Classes makes it impractical for members of the Classes to seek redress individually for the wrongful conduct alleged herein.  Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to class action analysis, the expense and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them.  Should separate actions be brought, or be required to be brought, by each member of the Classes, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.  The issues in this action can be decided by means of common, classwide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.  The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of other members of the Classes who are parties to the adjudication and/or may substantially impede their ability to adequately protect their interests.

67.     <u>Ascertainability</u>:  The Classes are ascertainable because they are defined using objective criteria that establish class membership with definite boundaries.

**COUNT ONE**
**Unlawful Failure to Pay Minimum Wage**
**Fair Labor Standards Act, 29 U.S.C. § 201** *et seq.*
*Plaintiffs on behalf of the FLSA Collective*

68.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

69.     Plaintiffs and the FLSA Collective assert this count pursuant to 29 U.S.C. § 216(b).  Plaintiffs consent to join this action.  Copies of Plaintiffs Geiser, Halloran, Acker, Aquilino, and Fraser's consents to sue were attached to the initial Complaint as an exhibit.  ECF No. 1.  As this action proceeds, it is likely that other individuals will sign consent forms and join as plaintiffs.

70.     At all relevant times, Defendant was an employer engaged in commerce and/or in the production of goods for commerce within the meaning of the FLSA.  *See* 29 U.S.C. §§ 203(b), 203(s)(1).

71.     At all relevant times, Defendant employed Plaintiffs and the proposed FLSA Collective, and Plaintiffs and the proposed FLSA Collective were Defendant's employees, within the meaning of the FLSA.  *See* 29 U.S.C. §§ 203(e), 203(g).

72.     At all relevant times, Defendant has had gross operating revenue in excess of $500,000.

73.     The FLSA requires covered employers like Defendant to pay employees like Plaintiffs and the proposed FLSA Collective federal minimum wage for hours worked.  *See* 29 U.S.C. § 206(a).

74.     Plaintiffs and the proposed FLSA Collective's employment do not fall under any of the exemptions to the minimum wage requirements of the FLSA.  *See* 29 U.S.C. § 213.

75.     At all relevant times, Defendant failed to pay Plaintiffs and the proposed FLSA Collective at least federal minimum wage for their work.

76.     At all relevant times, Defendant knew that Plaintiffs and the proposed FLSA Collective were not paid federal minimum wage for their work, and willfully and intentionally engaged in a widespread policy or practice of failing and refusing to pay Plaintiffs and the proposed FLSA Collective federal minimum wage.  *See* 29 U.S.C. § 255.  Defendant is a large and sophisticated entity familiar with the requirements of the FLSA.  Defendant's violations were willful because it knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA.

77.     Defendant's willful failure and refusal to pay Plaintiffs and the proposed FLSA Collective federal minimum wage for hours worked violates the FLSA.  *See* 29 U.S.C. § 206.

78.     As a direct and proximate result of these unlawful practices, Plaintiffs and the proposed FLSA Collective suffered and continue to suffer wage loss and are therefore entitled to recover unpaid minimum wages for up to three years prior to the filing of their claims, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

**COUNT TWO**
**Unlawful Failure to Pay Minimum Wage**
**New York Labor Law § 191 and §§ 650 *et seq.***
*Plaintiffs Geiser and Halloran on behalf of the New York Class*

79.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

80.     Plaintiffs Geiser and Halloran and the proposed New York Class assert this count pursuant to New York Labor Law §§ 191 and 651.

81.     At all relevant times, Defendant employed Plaintiffs Geiser and Halloran and the New York Class, and Plaintiffs Geiser and Halloran and the New York Class were Defendant's employees under New York law.

82.     At all relevant times, Plaintiffs Geiser and Halloran and the New York Class were not compensated for all hours worked at the applicable New York minimum wage.[1] The precise number of hours worked for which Plaintiffs Geiser and Halloran and

---

[1] Until December 31, 2016, the minimum wage for all workers in New York state was $9.00 per hour.  Beginning on December 31, 2016, the minimum wage in New York varied by location.

For New York City, the minimum wage was $11.00 per hour from December 31, 2016 until December 30, 2017; $13.00 per hour from December 31, 2017 to December 30, 2018; and $15.00 hour from December 31, 2018 to the present.

For Nassau, Suffolk, and Westchester counties, the minimum wage was $10.00 per hour from December 31, 2016 until December 30, 2017; $11.00 per hour from December 31, 2017 to December 30, 2018; $12.00 per hour from December 31, 2018 to December 30 2019; $13.00 per hour from December 31, 2019 until December 30, 2020; $14.00 per hour from December 31, 2020 to December 30, 2021; and $15.00 per hour from December 31, 2021 to the present.

For the remainder of the state, the minimum wage was $9.70 per hour from December 31, 2016 until December 30, 2017; $10.40 per hour from December 31, 2017 to December 30, 2018; $11.10 per hour from December 31, 2018 to December 30 2019; $11.80 per hour from December 31, 2019 until December 30, 2020; $12.50 per hour from December

the proposed New York Class were not paid the applicable New York minimum wage
will be proven at trial.

83.     Defendant knew or should have known the actual hours worked by
Plaintiffs Geiser and Halloran and the proposed New York Class, as Defendant was
responsible for scheduling hours of work for Plaintiffs Geiser and Halloran and the
proposed New York Class, and maintaining records of that work.

84.     At all relevant times, Defendant was aware of, and under a duty to comply
with the provisions of New York Labor Law governing the payment of wages, including
but not limited to New York Labor Law §§ 191 and 651.

85.     By failing and refusing to compensate Plaintiffs Geiser and Halloran and
the proposed New York Class for all hours worked at the applicable New York minimum
wage, Defendant failed to pay wages to those employees in accordance with the agreed
terms of employment in violation of New York Labor Law §§ 191 and 651.

86.     As a direct and proximate result of Defendant's unlawful conduct, as set
forth herein, Plaintiffs Geiser and Halloran and the proposed New York Class have
sustained damages including loss of earnings for hours worked on behalf of Defendant, in
an amount to be established at trial, and are entitled to recover their unpaid wages,
including interest therein, and an additional amount as liquidated damages pursuant to
New York Labor Law §§ 198 and 663.  Plaintiffs Geiser and Halloran and the proposed

---

31, 2020 to December 30, 2021; and $13.20 per hour from December 31, 2021 to the
present.

New York Class are also entitled to recover reasonable attorneys' fees and costs, pursuant to New York Labor Law §§ 198 and 663.

**COUNT THREE**
**Failure to Provide Time of Hire Wage Notice**
**New York Labor Law § 195**
*Plaintiffs Geiser and Halloran on behalf of the New York Class*

87.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

88.     Plaintiffs Geiser and Halloran and the proposed New York Class assert this count pursuant to New York Labor Law § 195.

89.     At all relevant times, Defendant employed Plaintiffs Geiser and Halloran and the New York Class, and Plaintiffs Geiser and Halloran and the New York Class were Defendant's employees under New York law.

90.     Defendant did not provide, at the time of hiring or any time thereafter, written notice to Plaintiffs Geiser and Halloran and the New York Class of some or all of the following information regarding their work for Defendant: the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary piece, commission, or other; allowances, if any, claimed as part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by Defendant; the physical address of Defendant's main office or principal place of business, and a mailing address, if different; and the telephone number of Defendant.

91.     Defendant failed to provide notice of this required information to Plaintiffs Geiser and Halloran and the New York Class at the time of hire.  Defendant also

knowingly and intentionally failed to provide notice of this required information to Plaintiffs Geiser and Halloran and the New York Class at any time after hiring.

92.     As a direct and proximate result of Defendant's unlawful conduct in violation of New York Labor Law § 195 as set forth herein, Plaintiffs Geiser and Halloran and the proposed New York Class may recover the damages and penalties provided for under New York Labor Law § 198, together with costs and reasonable attorneys' fees.

**COUNT FOUR**
**Failure to Provide Required Wage Statements**
**New York Labor Law § 195**
*Plaintiffs Geiser and Halloran on behalf of the New York Class*

93.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

94.     Plaintiffs Geiser and Halloran and the proposed New York Class assert this count pursuant to New York Labor Law § 195.

95.     At all relevant times, Defendant employed Plaintiffs Geiser and Halloran and the New York Class, and Plaintiffs Geiser and Halloran and the New York Class were Defendant's employees under New York law.

96.     Upon information and belief, Defendant did not furnish Plaintiffs Geiser and Halloran and the proposed New York Class with wage statements as required under New York Labor Law § 195.

97.     Defendant's failure to provide wage statements, including but not limited to statements that include the accurate regular hourly or rates of pay or the actual number of hours worked, with each payment of wages violates New York Labor Law § 195.

98.     Defendant failed to provide timely, accurate, and complete wage statements to Plaintiffs Geiser and Halloran and the proposed New York Class in accordance with New York Labor Law § 195.  Upon information and belief, Defendant did not provide any wage statements to the proposed New York Class, including wage statements that accurately reflect the actual hours worked, gross wages earned, net wages earned, or the appropriate deductions for the proposed New York Class.

99.     As a direct and proximate result of Defendant's unlawful conduct in violation of New York Labor Law § 195 as set forth herein, Plaintiffs Geiser and Halloran and the proposed New York Class may recover the damages and penalties provided for under New York Labor Law § 198, together with costs and reasonable attorneys' fees.

**COUNT FIVE**
**Unlawful Failure to Pay Minimum Wage**
**Pennsylvania Minimum Wage Act, 43 Pa. Stat. Ann. § 333.104(c)**
*Plaintiffs Acker and Aquilino on Behalf of the Pennsylvania Class*

100.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

101.     Plaintiffs Acker and Aquilino and the Pennsylvania Class assert this count pursuant to the Pennsylvania Minimum Wage Act ("PMWA"), 43. Pa. Stat. Ann. § 333.104(a).

102.     At all relevant times, Plaintiffs Acker and Aquilino and the Pennsylvania Class were Defendant's non-exempt employees and Defendant was an employer within the meaning of the PMWA.

103.    The minimum wage provisions of the PMWA, § 333.104(a), apply to Defendant's employment of Plaintiffs Acker and Aquilino and the Pennsylvania Class.

104.    At all relevant times, Plaintiff Acker and Aquilino and the Pennsylvania Class were not paid by Defendant for all hours worked at the applicable minimum wage.[2] The precise number of hours worked for which Plaintiff Acker and Aquilino and the Pennsylvania class were not paid the minimum wage will be proven at trial.

105.    At all relevant times, Defendant was aware of, and under a duty to comply with, the provisions of the PMWA governing the payment of wages, including but not limited to 43 Pa. Stat. Ann. § 333.104(a).

106.    By failing and refusing to pay minimum wage to Plaintiffs Acker and Aquilino and the Pennsylvania class for all hours worked, Defendant has willfully violated the PMWA.

107.    As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Plaintiffs Acker and Aquilino and the Pennsylvania Class have sustained damages including loss of earnings for hours worked on behalf of Defendant, in an amount to be established at trial, and are entitled to recover unpaid wage, including interest therein, liquidated damages, and reasonable attorneys' fees and costs pursuant to 43 Pa. Stat. Ann. §§ 333.113 and 260.10.

---

[2] At all relevant times, the Pennsylvania minimum wage was $7.25 per hour.

## COUNT SIX
### Unlawful Failure to Pay Minimum Wage
### Maine Minimum Wage Law, 26 M.R.S. § 664(1)
*Plaintiff Fraser on behalf of the Maine Class*

108.    The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

109.    Plaintiff Fraser and the proposed Maine Class assert this count pursuant to the Maine Minimum Wage Law, 26 Maine Revised Statutes (M.R.S.) § 664(1).

110.    At all relevant times, Plaintiff Fraser and the proposed Maine Class were non-exempt employees employed by Defendant within the meaning of 26 M.R.S. § 663.

111.    The minimum wage provisions of 26 M.R.S. § 664(1) apply to Defendant's employment of Plaintiff Fraser and the proposed Maine Class.

112.    At all relevant times, Plaintiff Fraser and the proposed Maine Class were not compensated for all hours worked at the applicable Maine minimum wage.[3]  The precise number of hours worked for which Plaintiff Fraser and the proposed Maine Class were not paid the minimum wage will be proven at trial.

113.    At all relevant times, Defendant was aware of, and under a duty to comply with, the provisions of the M.R.S. governing the payment of wages, including but not limited to 26 M.R.S. § 664(1).

---

[3] As relevant here, the Maine minimum wage was $7.50 until January 1, 2017, $9.00 from January 1, 2017 to December 31, 2017; $10.00 from January 1, 2018 to December 31, 2018; $11.00 from January 1, 2019 to December 31, 2019; $12.00 from January 1, 2020 to December 31, 2020; $12.15 from January 1, 2021 to December 31, 2021; and $12.75 from January 1, 2022 to the present.

114.    By failing and refusing to compensate Plaintiff Fraser and the proposed

Maine Class for all hours worked, Defendant has violated the M.R.S.

115.    As a direct and proximate result of Defendant's unlawful conduct, as set

forth herein, Plaintiff Fraser and the proposed Maine Class have sustained damages

including loss of earnings for hours worked on behalf of Defendant, in an amount to be

established at trial, and are entitled to recover their unpaid earnings, including interest

therein, and an additional amount as liquidated damages pursuant to the M.R.S.  Plaintiff

Fraser and the proposed Maine Class are also entitled to recover reasonable attorneys'

fees and costs, pursuant to 26 M.R.S. § 670.

**COUNT SEVEN**
**Unlawful Failure to Pay Timely Wages**
**Maine Wage Payment Law, 26 M.R.S. §§ 621 & 626-A**
*Plaintiff Fraser on behalf of the Maine Class*

116.    The allegations of each of the preceding paragraphs are re-alleged and

incorporated herein by reference.

117.    Plaintiff Fraser and the proposed Maine Class assert this count pursuant to

the 26 M.R.S. § 626-A for violations of 26 M.R.S. § 621-A.

118.    At all relevant times, Plaintiff Fraser and the proposed Maine Class were

employees employed by Defendant within the meaning of 26 M.R.S. § 621-A.

119.    Defendant failed to pay all wages due to Plaintiff Fraser and the Maine

Class on payday as required under 26 M.R.S. § 621-A.

120.    Plaintiff Fraser, through counsel, demanded all unpaid wages for himself

and the Maine Class by letter mailed to Defendant's address on May 23, 2022, which was

delivered on May 24, 2022.  Defendant failed to pay Plaintiff Fraser and the Maine Class all wages owed within eight days of receipt of the demand.

121.    Accordingly, Defendant is liable pursuant to 26 M.R.S. § 626-A.  Plaintiff Fraser and the Maine Class are entitled to recover their unpaid wages, including interest therein, and an additional amount of liquidated damages equal to twice the amount of unpaid wages pursuant to 26 M.R.S. § 626-A.  Plaintiff Fraser and the proposed Maine Class are also entitled to recover reasonable attorneys' fees and costs, pursuant to 26 M.R.S. § 626-A.

**COUNT EIGHT**
**Unlawful Failure to Pay All Wages Owed**
**Maine Wage Payment Law, 26 M.R.S. §§ 626-A & 629**
*Plaintiff Fraser on behalf of the Maine Class*

122.    The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

123.    Plaintiff Fraser and the proposed Maine Class assert this count pursuant to the 26 M.R.S. § 626-A for violations of 26 M.R.S. § 629.

124.    At all relevant times, Plaintiff Fraser and the proposed Maine Class were employees employed by Defendant within the meaning of 26 M.R.S. § 629.

125.    Defendant failed to pay Plaintiff Fraser and the Maine Class for all hours worked as required under 26 M.R.S. § 629.

126.    Plaintiff Fraser, through counsel, demanded all unpaid wages for himself and the Maine Class by letter mailed to Defendant's address on May 23, 2022, which was delivered on May 24, 2022.  Defendant failed to pay Plaintiff Fraser and the Maine Class all wages owed within eight days of receipt of the demand.

127.    Accordingly, Defendant is liable pursuant to 26 M.R.S. § 626-A.  Plaintiff

Fraser and the Maine Class are entitled to recover their unpaid wages, including interest

therein, and an additional amount of liquidated damages equal to twice the amount of

unpaid wages pursuant to 26 M.R.S. § 626-A.  Plaintiff Fraser and the proposed Maine

Class are also entitled to recover reasonable attorneys' fees and costs, pursuant to 26

M.R.S. § 626-A.

**COUNT NINE**
**Unlawful Failure to Pay Overtime**
**Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.***
*Plaintiffs Acker and Fraser*

128.    The allegations of each of the preceding paragraphs are re-alleged and

incorporated herein by reference.

129.    Plaintiffs Acker and Fraser assert this count pursuant to 29 U.S.C. § 216(b).

Plaintiffs consent to join this action.  Copies of Plaintiffs' consents to sue were attached

to the initial Complaint as an exhibit.  ECF No. 1.

130.    At all relevant times, Defendant was an employer engaged in commerce

and/or in the production of goods for commerce within the meaning of the FLSA.  *See* 29

U.S.C. §§ 203(b), 203(s)(1).

131.    At all relevant times, Defendant employed Plaintiffs Acker and Fraser, and

Plaintiffs Acker and Fraser were Defendant's employees, within the meaning of the

FLSA.  *See* 29 U.S.C. §§ 203(e), 203(g).

132.    At all relevant times, Defendant has had gross operating revenue in excess

of $500,000.

133.    The FLSA requires covered employers like Defendant to pay employees like Plaintiffs Acker and Fraser no less than one-and-a-half times their regular rate of pay for all hours worked in excess of forty in a workweek.  *See* 29 U.S.C. § 207.

134.    Plaintiff Acker's and Plaintiff Fraser's employment do not fall under any of the exemptions to the overtime requirements of the FLSA.  *See* 29 U.S.C. § 213.

135.    As described above, Plaintiffs Acker and Fraser worked more than forty hours per week for Defendant.

136.    At all relevant times, Defendant did not properly compensate Plaintiffs Acker and Fraser for all hours worked in excess of forty in a workweek, as required by the FLSA.

137.    At all relevant times, Defendant knew that Plaintiffs Acker and Fraser had worked overtime without proper compensation, and willfully and intentionally failed and refused to pay Plaintiffs Acker and Fraser wages at the required overtime rates.  *See* 29 U.S.C. § 255.

**COUNT TEN**
**Unlawful Failure to Pay Overtime**
**Pennsylvania Minimum Wage Act, 43 Pa. Stat. Ann. § 333.104(c)**
*Plaintiffs Acker*

138.    The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

139.    Plaintiff Acker asserts this count pursuant to the PMWA, 43 Pa. Stat. Ann. § 333.104(c).

140.    At all relevant times, Plaintiff Acker was Defendant's non-exempt employee and Defendant was an employer within the meaning of the PMWA, 43 Pa. Stat. Ann. § 333.103.

141.    The overtime wage provisions of the PMWA, § 333.104(c), apply to Defendant's employment of Plaintiff Acker.

142.    As described above, Plaintiff Acker worked more than forty hours in a week, but was not paid overtime by Defendant.  The precise number of hours worked for which Plaintiff Acker was not paid overtime premiums will be proven at trial.

143.    At all relevant times, Defendant was aware of, and under a duty to comply with, the provisions of the PMWA governing the payment of wages, including but not limited to 43 Pa. Stat. Ann. § 333.104(c).

144.    By failing and refusing to pay overtime premiums to Plaintiff Acker for all hours worked in excess of forty per week, Defendant has willfully violated the PMWA and its supporting regulations.

145.    As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Plaintiff Acker has sustained damages including loss of earnings for hours worked on behalf of Defendant, in an amount to be established at trial, and is entitled to recover unpaid overtime premiums, including interest therein, liquidated damages, and reasonable attorneys' fees and costs pursuant to 43 Pa. Stat. Ann. §§ 333.113 and 260.10.

**COUNT ELEVEN**
**Unlawful Failure to Pay Overtime**
**Maine Minimum Wage Law, 26 M.R.S. § 664(3)**
*Plaintiffs Fraser*

146.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

147.     Plaintiff Fraser asserts this count pursuant to the Maine Minimum Wage Law, 26 M.R.S. § 664(3).

148.     At all relevant times, Plaintiff Fraser was a non-exempt employee employed by Defendant within the meaning of 26 M.R.S. § 663.

149.     The overtime wage provisions of 26 M.R.S. § 664(3) apply to Defendant's employment of Plaintiff Fraser.

150.     As described above, Plaintiff Fraser worked more than forty hours per week for Defendant and was not paid overtime premiums for hours actually worked in excess of forty per week.  The precise number of hours worked for which Plaintiff Fraser was not paid overtime premiums will be proven at trial.

151.     At all relevant times, Defendant was aware of, and under a duty to comply with, the provisions of the M.R.S. governing the payment of wages, including but not limited to 26 M.R.S. § 664(3).

152.     By failing and refusing to pay overtime premiums to Plaintiff Fraser for all hours actually worked in excess of forty per week, Defendant has violated the M.R.S.

153.     As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Plaintiff Fraser sustained damages including loss of earnings for hours worked on behalf of Defendant, in an amount to be established at trial, and are entitled to

recover their unpaid overtime premiums, including interest therein, and an additional amount as liquidated damages pursuant to the M.R.S.  Plaintiff Fraser is also entitled to recover reasonable attorneys' fees and costs, pursuant to 26 M.R.S. § 670.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, and all those similarly situated, collectively request that this Honorable Court:

1.      Issue an order certifying this action as a collective action under the FLSA and designating Plaintiffs as representatives of all those similarly situated, 29 U.S.C. § 216(b).

2.      Authorize that notice of this collective action be issued by the Court or Plaintiffs to all persons who have participated in Defendant's ARCs at any time during the three years immediately preceding the filing of this suit, up through and including the date this notice is issued.  Such notice shall inform these persons of the filing of this civil action, the nature of the action, and their right to join this lawsuit if they believe they were denied proper wages pursuant to 29 U.S.C. § 216(b).

3.      Grant leave to add additional plaintiffs or claims by motion, the filing of consent forms, or any other method approved by the Court.

4.      Issue an order certifying the New York Class, the Pennsylvania Class, and the Maine Class pursuant to Federal Rule of Civil Procedure 23.

5.      Issue an order appointing Plaintiffs Geiser, Halloran, Acker, Aquilino, and Fraser as representatives of the classes they seek to represent.

6.     Issue an order appointing Plaintiffs' counsel as Class Counsel for all of the Classes.

7.     Issue an order providing for notice to the Classes.

8.     Enter a declaratory judgment that Defendant's violations were unlawful under the FLSA and were willful.

9.     Award Plaintiffs and all those similarly situated actual damages for unpaid wages and liquidated damages equal to the unpaid wages found due to Plaintiffs and the proposed FLSA Collective as provided by the FLSA, 29 U.S.C. § 216(b).

10.     Award Plaintiffs and all those similarly situated pre- and post-judgment interest at the relevant statutory rate as provided by the FLSA, 29 U.S.C. § 216(b).

11.     Award Plaintiffs and all those similarly situated attorneys' fees, costs (including expert fees), and disbursements as provided by the FLSA, 29 U.S.C. § 216(b).

12.     Award Plaintiffs Geiser and Halloran and the New York Class actual damages for unpaid wages, liquidated damages, statutory damages, penalties, attorneys' fees, costs, and interest, as provided under New York law.

13.     Award Plaintiffs Acker and Aquilino and the Pennsylvania Class actual damages for unpaid wages, liquidated damages, attorneys' fees, costs, and interest, as provided under Pennsylvania law.

14.     Award Plaintiff Fraser and the Maine Class actual damages for unpaid wages, liquidated damages, statutory damages, penalties, attorneys' fees, costs, and interest, as provided under Maine law.

15.     Award Plaintiffs, the New York Class, the Pennsylvania Class, and the Maine Class, and all others similarly situated further legal and equitable relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a trial by jury on all issues so triable.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DATED:  June 1, 2022

Respectfully submitted,

COHEN MILSTEIN SELLERS & TOLL PLLC

By:  */s/ Christine E. Webber*

Christine E. Webber (admitted Pro Hac Vice)
Joseph M. Sellers (admitted Pro Hac Vice)
Kalpana Kotagal (Atty. Reg. No. 4462792)
Rebecca A. Ojserkis* (Atty. Reg. No. 5578216)
1100 New York Ave., N.W., Suite 500
Washington, D.C.  20005
Tel.:  (202) 408-4600
Fax.:  (202) 408-4699
cwebber@cohenmilstein.com
jsellers@cohenmilstein.com
kkotagal@cohenmilstein.com
rojserkis@cohenmilstein.com

Michael Hancock (admitted Pro Hac Vice)
88 Pine Street, 14th Floor
New York, NY  10005
Tel.:  (212) 838-7797
Fax.:  (212) 838-7745
mhancock@cohenmilstein.com

*\* Admitted only in New York and Maryland; Supervision by Christine Webber, Joseph Sellers, and Kalpana Kotagal, members of the D.C. Bar*

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DATED:  June 1, 2022                    ROSEN BIEN GALVAN & GRUNFELD LLP

                                        By:  */s/ Michael Freedman*
                                        _____
                                             Gay Grunfeld (admitted Pro Hac Vice)
                                             Michael Freedman (admitted Pro Hac Vice)
                                             Priyah Kaul (admitted Pro Hac Vice)
                                             101 Mission Street, 6th Floor
                                             San Francisco, CA  94105
                                             Tel.:  (415) 433-6830
                                             Fax.:  (415) 433-7104
                                             ggrunfeld@rbgg.com
                                             mfreedman@rbgg.com
                                             pkaul@rbgg.com

DATED:  June 1, 2022                    RUKIN HYLAND & RIGGIN LLP

                                        By:  */s/ Valerie Brender*
                                        _____
                                             Jessica Riggin (admitted Pro Hac Vice)
                                             Valerie Brender (Atty. Reg. No. 5203005)
                                             1939 Harrison St., Suite 290
                                             Oakland, CA 94612
                                             Tel.: (415) 421-1800
                                             Fax.: (415) 421-1700
                                             jriggin@rukinhyland.com
                                             vbrender@rukinhyland.com

                                        *Attorneys for Plaintiffs*