**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT GEISER, SHAUN HALLORAN, AVERY ACKER, CHRISTINA AQUILINO, AND JOSHUA FRASER, on behalf of themselves and all others similarly situated,<br><br>                      Plaintiffs,<br><br>v.<br><br>THE SALVATION ARMY, a New York nonprofit corporation,<br><br>                      Defendant. | Civil Action No. 1:22-cv-01968-JMF<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THE SALVATION ARMY, A NEW YORK NONPROFIT CORPORATION'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT FOR DAMAGES PURSUANT TO FED. R. CIV. P. 12(B)(6)**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................... 3

LEGAL STANDARD ............................................................................................................. 5

ARGUMENT ......................................................................................................................... 5

I.  The Second Amended Complaint Fails to State a Claim Under the FLSA Because
    Plaintiffs Have Not Plausibly Pleaded that Beneficiaries of the New York
    Corporation's ARCs Are Employees Under the FLSA. ................................................. 5

    A.  The mere performance of work therapy at the direction and control of the
        New York Corporation does not render Plaintiffs employees under the
        FLSA. ................................................................................................................... 5

    B.  Plaintiffs have not plausibly pled that the economic reality reflects an
        employment relationship between Plaintiffs and the New York
        Corporation. ......................................................................................................... 9

        1.  Plaintiffs cannot plausibly allege that they had any expectation of
            compensation. .......................................................................................... 10

        2.  Plaintiffs fail to plausibly allege that the New York Corporation is
            the primary beneficiary of their rehabilitation relationship. .................. 13

II. The Second Amended Complaint Cannot Plausibly Allege Employee Status
    Under New York, Pennsylvania, and Maine Laws Because the Standards for
    Employee Parallel the FLSA. ..................................................................................... 19

CONCLUSION .................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Cathedral Buffet, Inc.*,
  887 F.3d 761 (6th Cir. 2018) ...................................................................................8

*Affo v. Granite Bay Care, Inc.*,
  2013 WL 2383627 (D. Me. May 30, 2013) ..............................................................20

*Armento v. Asheville Buncombe Cmty. Christian Ministry, Inc.*,
  856 F. App'x. 445 (4th Cir. 2021) .........................................................................7, 9

*Ashcroft v. Iqbal*,
  556 U.S. 662, 678 (2009)......................................................................................5, 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................5, 12

*Bennett v. Frank*,
  395 F.3d 409 (7th Cir. 2005) ....................................................................................8

*Berger v. Nat'l Collegiate Athletic Ass'n*,
  843 F.3d 285 (7th Cir. 2016) ....................................................................................6

*Danneskjold v. Hausrath*,
  82 F.3d 37 (2d Cir. 1996)...............................................................................6, 8, 17

*Doyle v. City of New York*,
  91 F. Supp. 3d 480 (S.D.N.Y. 2015)...............................................................6, 7, 8, 9

*Fochtman v. Hendren Plastics, Inc.*,
  No. 20-2061, 2022 WL 3652684 (8th Cir. Aug. 25, 2022) .....................................2, 8, 13, 18

*Freeman v. Key Largo Volunteer Fire & Rescue Dep't.*,
  494 F. App'x. 940 (11th Cir. 2012) ...........................................................................8

*Glatt v. Fox Searchlight Pictures, Inc.*,
  811 F.3d 528 (2d Cir. 2016).............................................................................. *passim*

*Guevara v. I.N.S.*,
  902 F.2d 394 (5th Cir. 1990) ....................................................................................8

*Harker v. State Use Indus.*,
  990 F.2d 131 (4th Cir. 1993) ....................................................................................8

# TABLE OF AUTHORITIES
(continued)

**Page**

*Hollins v. Regency Corp.*,
  867 F.3d 830 (7th Cir. 2017) ...............................................................8

*Isaacson v. Penn. Cmty. Servs. Inc.*,
  450 F.2d 1306 (4th Cir. 1971) ..............................................................8

*Jones v. IndustryPro.com, Inc.*,
  2021 WL 2593768 (N.D. Ga. Mar. 2, 2021)...........................................8

*Kavazanjian v. Naples*,
  2006 WL 2795220 (E.D.N.Y. Sept. 26, 2006) .........................................8

*Kelly-Myers v. Mercy Health Sys. of Se. Penn.*,
  2017 WL 4347605 (E.D. Pa. Sept. 29, 2017) .......................................19

*Mandala v. NTT Data, Inc.*,
  975 F.3d 202 (2d Cir. 2020).............................................................5, 13

*McKinney v. Chester Cnty.*,
  2021 WL 409975 (E.D. Pa. Feb. 5, 2021) ...........................................19

*Ndambi v. CoreCivic, Inc.*,
  990 F.3d 369 (4th Cir. 2021) ............................................................6, 8

*Oliver v. Rio Acquisition Partners, LLC*,
  2019 WL 801952 (S.D.N.Y. Feb. 21, 2019)..........................................12

*Saleem v. Corp. Transp. Grp., Ltd.*,
  854 F.3d 131 (2d Cir. 2017)..................................................................9

*Schumann v. Collier Anesthesia*,
  803 F.3d 1199 (11th Cir. 2015) ............................................................8

*Scovil v. FedEx Ground Package Sys., Inc.*,
  886 F. Supp. 2d 45 (D. Me. 2012) ......................................................20

*Solis v. Laurelbrook Sanitarium & Sch., Inc.*
  642 F.3d 518 (6th Cir. 2011) ..........................................................8, 18

*Steelman v. Hirsch*,
  473 F.3d 124 (4th Cir. 2007) ............................................................6, 8

*Tony and Susan Alamo Found. v. Sec'y of Lab.*,
  471 U.S. 290 (1985)........................................................................10, 11

## TABLE OF AUTHORITIES
(continued)

**Page**

*United States v. Silk,*
    331 U.S. 704 (1947) ............................................................................................9

*Vanskike v. Peters*,
    974 F.2d 806 (7th Cir. 1992) .........................................................................8, 9

*Vaughn v. Phoenix House Found., Inc.*,
    2019 WL 568012 (S.D.N.Y. Feb. 12, 2019), *aff'd sub nom. Vaughn v. Phoenix House New York Inc.*, 957 F.3d 141 ................................................14, 15, 16, 17

*Vaughn v. Phoenix House N.Y. Inc.*,
    957 F.3d 141 (2d Cir. 2020).................................................................... *passim*

*Velarde v. GW GJ, Inc.*,
    914 F.3d 779 (2d Cir. 2019)..................................................................8, 18, 19

*Walling v. Portland Terminal Co.*,
    330 U.S. 148 (1947)................................................................................ *passim*

*Whiteside v. Hover-Davis, Inc.*,
    995 F.3d 315 (2d Cir. 2021).................................................................................5

*Williams v. Strickland*,
    87 F.3d 1064 (9th Cir. 1996) .................................................................. *passim*

**Statutes**

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ................................................ *passim*

Maine Minimum Wage Law, 26 M.R.S. § 663 *et seq.* ................................................20

Maine Wage Payment Law, 26 M.R.S. §629 ...............................................................20

N.Y. Lab. Law § 190 (McKinney 2022)......................................................................19

N.Y. Lab. Law § 651 (McKinney 2022)................................................................18, 19

Pennsylvania Minimum Wage Act, 43 Pa. Stat. Ann. § 333.102 *et seq.* (West 2022) ......................................................................................................................19

**Other Authorities**

7 C.F.R. § 273.11(e)-(h).................................................................................................4

Fed. R. Civ. P. 12(b)(6)..................................................................................................1

**TABLE OF AUTHORITIES**
(continued)

**Page**

Salvation Army, https://satruck.org/Home/NationalRehabilitation...............................................16

Supplemental Nutrition Assistance Program, Benefits.gov,
     https://www.benefits.gov/benefit/361 (accessed July 5, 2022) .................................................4

Defendant The Salvation Army, a New York religious and charitable corporation (the "New York Corporation"), submits this Memorandum of Law in Support of its Motion to Dismiss.

## PRELIMINARY STATEMENT

Among its many charitable good works, The New York Corporation operates a religious-based, holistic, residential rehabilitation program at multiple locations, known as "Adult Rehabilitation Centers" or "ARCs", generally available free-of-charge to vulnerable individuals who are disaffiliated from society for a variety of reasons ("Beneficiaries"). Beneficiaries have access to the many critical components of the program, including spiritual counseling, attending religious worship services and Bible study, personalized counseling services, recreational activities, as well as work therapy. The work therapy component is designed to provide Beneficiaries with a sense of self-worth and accomplishment, and to enable them to reintegrate into society and return to (or secure for the first time) gainful employment. Beneficiaries are provided with food and housing to enable them to focus on their rehabilitation and to ensure that they remain in a supportive environment.

Plaintiffs contend that their time spent doing work therapy constitutes employment under the Fair Labor Standards Act ("FLSA" or the "Act") and New York, Pennsylvania, and Maine state wage and hour laws. But Plaintiffs do not, and cannot, plausibly plead that work therapy in any way resembles the traditional bargained-for exchange of labor that defines employment under the FLSA or its state analogs. Indeed, it is well-settled law that work therapy performed in the context of a rehabilitative program does not constitute an employment relationship. Three Courts of Appeals, including the Second Circuit, have now found as much, relying on the reasoning from *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947), where the Supreme Court observed that the FLSA "was obviously not intended to stamp all persons as employees

1

who, without any express or implied compensation agreement, might work for their own advantage on the premises of another."

Most on point here, the Ninth Circuit 25 years ago held that Beneficiaries were not employees of the New York Corporation's Salvation Army affiliate in the Western United States. In *Williams v. Strickland*, 87 F.3d 1064 (9th Cir. 1996), the Ninth Circuit rejected the exact claim Plaintiffs raise here, finding that the relationship between The Salvation Army and the plaintiff, an ARC Beneficiary in California, was "solely rehabilitative" and did not constitute employment. Specifically, the court found the fact that the plaintiff had *no* expectation of compensation, either express or implied, to be fatal to his claim. The Second Circuit adopted a similar approach with respect to the status of individuals in a residential substance abuse program. In *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141 (2d Cir. 2020) ("*Vaughn II*"), the Second Circuit rejected an FLSA wage claim by a participant in the program who was required to participate in work therapy, finding the participant to be the primary beneficiary of the rehabilitation program, thus rendering his claim of employment implausible. Finally, and most recently, the Eighth Circuit issued a decision in August 2022 reaching a similar conclusion as the Ninth Circuit (in *Strickland*) and the Second Circuit (in *Vaughn*), and relying on both cases to analyze a rehabilitation program that included work therapy. In *Fochtman v. Hendren Plastics*, *Inc.*, No. 20-2061, 2022 WL 3652684 (8th Cir. Aug. 25, 2022), the court held that plaintiffs, who were required to work as part of a recovery program, had no expectation of compensation and were the primary beneficiaries of their relationship with the program and reversed the district court's grant of summary judgment to plaintiffs.

As explained below, well-reasoned, controlling authority demonstrates that Plaintiffs cannot allege a plausible claim under the FLSA or state law.

## FACTUAL BACKGROUND

The Salvation Army is an international religious denomination and charitable organization, a branch of the Christian Church, founded in Great Britain in 1865.  Separate regionally-based religious non-profit entities operate its numerous religious and charitable programs in the United States.  Plaintiffs allege that the New York Corporation owns and operates approximately 36 ARCs within the 14 states and territories that comprise The Salvation Army's Eastern Territory.  *See* Declaration of Sadina Montani, Ex. A, Second Amended Class and Collective Action Complaint for Damages, ECF No. 83 ("SAC") ¶¶ 1, 26.

ARC programs are designed to provide for the spiritual and social rehabilitation of disaffiliated persons generally, including people who are "unhoused or marginally housed, who are very poor, who have drug or alcohol addiction problems, and/or who suffer from mental illness."  SAC ¶ 1.  Through its ARC programs, the New York Corporation provides food, shelter, clothing, and rehabilitative services, free of charge in most cases, to thousands of vulnerable individuals annually.  SAC ¶¶ 1, 3.

Enrollment into an ARC program is voluntary.  SAC ¶ 1.  These programs are intended to provide short-term spiritual, social, and emotional assistance and prepare Beneficiaries to re-enter society and return to gainful employment (or find employment for the first time).  *See Strickland*, 87 F.3d. at 1067-68.  Beneficiaries typically remain in the ARC program for 180 days or fewer.  SAC ¶ 57.  ARC programs are generally made available at no charge to Beneficiaries; however, as Plaintiffs allege, Beneficiaries who receive certain government-provided benefits are asked to "turn these benefits over" to the New York Corporation for the duration of their stay to "offset the costs of [their] room, board, and clothing."  *Strickland*, 87 F.3d at 1067; *see also* SAC

¶¶ 3, 56 (asserting that Beneficiaries are "require[d] . . . to relinquish to Defendant SNAP[1]

benefits they are receiving or to sign up for benefits if they are eligible . . . and then turn over the

benefits to Defendant").

Beneficiaries are required to participate in work therapy during their time at an ARC.

SAC ¶ 31.  Work therapy is designed to teach the Beneficiary good work habits and to restore

self-esteem.  *Strickland*, 87 F.3d at 1067.  The New York Corporation considers work therapy to

be a critical component of its spiritually-based rehabilitation program.  Beneficiaries do not

receive compensation for their time spent doing work therapy, as the purpose of this work is

solely to aid in their rehabilitation.  *Id.*  Indeed, upon enrollment, an "Admittance Statement" is

required to be signed by all Beneficiaries, acknowledging that they understand that they are

beneficiaries, not employees, of the New York Corporation, and that their "admission and

continued residence is dependent upon . . . needing such assistance . . . ."  *Id.* at 1065.

Beneficiaries receive a small gratuity, typically starting at $5 per week, intended to allow them to

purchase small items at the canteen located in the ARC.  SAC ¶¶ 3, 45; *Strickland*, 87 F.3d at

1065 (noting that plaintiff received a "small stipend of seven to twenty dollars per week").  The

gratuity is provided solely on the basis of a Beneficiary's progress in the rehabilitation program,

and is not tied to the quality or quantity of work therapy performed.  *See* SAC ¶ 45 (noting that

the gratuity is "paid on an escalating scale[,]" increasing "by $1 each week" until a designated

maximum is reached).

---

[1] The Supplemental Nutrition Assistance Program ("SNAP") is a federal benefits program through which eligible low-income individuals receive a debit card through which they can purchase food at retail stores. *See* Supplemental Nutrition Assistance Program, Benefits.gov, https://www.benefits.gov/benefit/361 (accessed July 5, 2022).  The statute and regulations authorize certain programs to utilize these benefits to provide food to eligible individuals.  *See, e.g.*, 7 C.F.R. § 273.11(e) (drug and alcohol rehabilitation programs); 7 C.F.R. § 273.11(f) (group living arrangements); 7 C.F.R. § 273.11(g) (shelters for battered women and children); and 7 C.F.R. § 273.11(h) (authorized homeless meal providers).

While some Beneficiaries are assigned work therapy at the ARC facility (*e.g.* working in the kitchen to prepare and clean up after meals), others complete their work therapy by performing tasks related to processing clothing and other goods donated for sale at the thrift stores associated with their ARC program.  SAC ¶¶ 20-24.

## LEGAL STANDARD

To survive a motion to dismiss, Plaintiffs bear the burden to "'state a claim to relief that is plausible on its face.'"  *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Plausibility "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).   Indeed, a "court should not accept as true allegations that amount to mere 'legal conclusions.'"  *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).  Rather, "claims must rest on well-pleaded *factual* allegations."  *Whiteside*, 995 F.3d at 321.

## ARGUMENT

I.    **The Second Amended Complaint Fails to State a Claim Under the FLSA Because Plaintiffs Have Not Plausibly Pleaded that Beneficiaries of the New York Corporation's ARCs Are Employees Under the FLSA.**

A.    **The mere performance of work therapy at the direction and control of the New York Corporation does not render Plaintiffs employees under the FLSA.**

This case should be dismissed because of Plaintiffs' fundamental mistake in assuming that Beneficiaries are employees simply because they perform work therapy at the direction and control of the New York Corporation.  S*ee, e.g.*, SAC ¶¶ 2, 7, 20-24.  This assumption runs counter to controlling precedent by the Supreme Court and the Second Circuit requiring courts to assess the "'economic realities'" of the "'particular situation'" and recognizing various situations in which the mere performance of activities that might be described as work does not create an

employment relationship.  *See, e.g.*, *Doyle v. City of New York*, 91 F. Supp. 3d 480, 486

(S.D.N.Y. 2015) (finding work performed as post-release community service in lieu of further

incarceration was not an employment relationship for purposes of the FLSA); *see also Vaughn*

*II*, 957 F.3d at 141.  Plaintiffs' claims must be dismissed because they have failed to "allege

facts, which, taken as true, establish that they were employees . . . ." *Berger v. Nat'l Collegiate*

*Athletic Ass'n*, 843 F.3d 285, 290 (7th Cir. 2016).

        The FLSA defines an "employee" as "any individual employed by an employer" and an

"employer" as "any person acting directly or indirectly in the interest of an employer in relation

to an employee."  29 U.S.C. § 203(d), (e)(1).  The Act defines "employ" as to "suffer or permit

to work."  29 U.S.C. § 203(g).  Perhaps because these definitions are almost universally

considered "circular" and "unhelpful[]," courts have long had to determine whether particular

circumstances constitute an employment relationship.  *See, e.g.*, *Doyle,* 91 F. Supp. 3d. at 483.

Courts consistently hold that although the FLSA was intended to be broadly interpreted, its

application is not unlimited.  *See Portland Terminal Co.*, 330 U.S. at 148.  Rather, the FLSA

"was enacted to protect workers who operate within 'the *traditional* employment paradigm.'"

*Ndambi v. CoreCivic, Inc.*, 990 F.3d 369, 372 (4th Cir. 2021) (emphasis added).  *See also*

*Danneskjold v. Hausrath*, 82 F.3d 37, 42 (2d Cir. 1996) (incarcerated plaintiff "was not an

employee in any conventional sense"); *Steelman v. Hirsch*, 473 F.3d 124, 129 (4th Cir. 2007)

("However, when relationships have deviated from the traditional understanding of employment

in fundamental ways, the Supreme Court has refused to shoehorn them into the Act.").  In other

words, not every relationship in which one person performs activities that might be characterized

as "work" at the direction and control of another is an employment relationship.  Rather*,*

"employment for FLSA purposes is a 'flexible concept to be determined on a case-by-case basis

by review of the totality of the circumstances.'" *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 536 (2d Cir. 2016).

While work therapy is one element of the Plaintiffs' relationship with the New York Corporation, it is not the defining one. Rather, Plaintiffs' relationship with the New York Corporation is defined by their participation in the rehabilitation program, of which work therapy is just one component. Work therapy performed in the context of a rehabilitation program with the objective of providing vulnerable individuals with self-esteem and good work habits to help them reintegrate into society does not reflect the traditional employment relationship contemplated by Congress when it enacted the FLSA. *See Doyle*, 91 F. Supp. 3d. at 487 ("[I]nterpreting the term 'employee' to include those in Plaintiffs' position would not be consistent with Congress's purposes in enacting the FLSA."). While Plaintiffs performed work therapy "at the direction and control" of the New York Corporation, this fact is largely irrelevant to the analysis because the FLSA simply was not intended to cover work therapy performed for the purpose of rehabilitation. *See Strickland*, 87 F.3d 1064; *see also Vaughn II*, 957 F.3d at 145 (dismissing FLSA action because work therapy participants were the "primary beneficiary" of their relationship with the rehabilitation center).

Consistent with this understanding, courts have held that no employment relationship existed in numerous other contexts in which a person or entity directed or controlled the "work" of another, but where the relationship did not manifest the bargained-for exchange of labor that defines employment under the FLSA. In particular, courts have reached this conclusion where, as here, the individual engaged in the work for his or her own benefit, such as work performed as a requirement of living in a homeless shelter,[2] internships and work performed by student

---

[2] *Armento v. Asheville Buncombe Cmty. Christian Ministry, Inc.*, 856 F. App'x. 445 (4th Cir. 2021).

trainees,[3] work performed as an alternative to incarceration,[4] and work performed as an alternative to military service.[5]  Courts have reached similar outcomes in cases involving prison labor,[6] work performed in civil detention situations,[7] volunteer work,[8] and work performed by romantic partners sharing in a business.[9]  Such situations simply do not resemble a conventional employment relationship, where there is an arms-length exchange of labor for value received. *See Doyle*, 91 F. Supp. 3d at 487 (citing *Vanskike v. Peters*, 974 F.2d 806, 809–11 (7th Cir. 1992) (noting that custodial relationship did "not stem from any remunerative relationship or bargained-for exchange of labor for consideration")).  And while there is no explicit statutory exception for individuals in a residential rehabilitation program, as with some of the other types of relationships listed above, that is likely because "the idea was too outlandish to occur to anyone when the legislation was under consideration by Congress."  *Bennett v. Frank*, 395 F.3d 409, 410 (7th Cir. 2005).

---

[3] *See, e.g.*, *Glatt*, 811 F.3d 528; *Velarde v. GW GJ, Inc.*, 914 F.3d 779 (2d Cir. 2019); *Schumann v. Collier Anesthesia*, 803 F.3d 1199 (11th Cir. 2015); *Hollins v. Regency Corp.*, 867 F.3d 830 (7th Cir. 2017); *Solis v. Laurelbrook Sanitarium & Sch., Inc.* 642 F.3d 518 (6th Cir. 2011); *Jones v. IndustryPro.com, Inc.*, 2021 WL 2593768 (N.D. Ga. Mar. 2, 2021).

[4] *See e.g.*, *Doyle*, 91 F. Supp. 3d 480; *Vaughn II*, 957 F.3d 141; *Fochtman*, 2022 WL 3652684.

[5] *Isaacson v. Penn. Cmty. Servs. Inc.,* 450 F.2d 1306 (4th Cir. 1971).

[6] *See, e.g.*, *Danneskjold*, 82 F.3d 37; *Kavazanjian v. Naples*, 2006 WL 2795220 (E.D.N.Y. Sept. 26, 2006); *Vanskike v. Peters*, 974 F.2d 806 (7th Cir. 1992); *Harker v. State Use Indus.*, 990 F.2d 131 (4th Cir. 1993).

[7] *See e.g.*, *Guevara v. I.N.S.*, 902 F.2d 394 (5th Cir. 1990); *Ndambi*, 990 F.3d 369.

[8] *See, e.g.*, *Freeman v. Key Largo Volunteer Fire & Rescue Dep't.*, 494 F. App'x. 940 (11th Cir. 2012) (volunteer firefighters); *Acosta v. Cathedral Buffet, Inc.*, 887 F.3d 761 (6th Cir. 2018) (church-owned restaurant operated with unpaid church members).

[9] *Steelman v. Hirsch*, 473 F.3d 124.

**B.      Plaintiffs have not plausibly pled that the economic reality reflects an employment relationship between Plaintiffs and the New York Corporation.**

In considering whether an employment relationship exists, courts assess the economic reality of the particular relationship.[10]   As this Court has recognized, "the economic realities must be 'assessed by reference to the particular situation,'" with "attention to whether the case involves the kind of employment relationship Congress had in mind when it enacted the FLSA." *Doyle*, 91 F. Supp. 3d at 486-87.  Indeed, "the 'best guide' of whether the term 'employee' encompasses [plaintiffs] . . .  is not a multi-factor test or the unhelpful statutory definition of the term 'employee,' but rather 'our common linguistic intuitions[.]'"  *Id.* at 487 (quoting *Vanskike*, 974 F.2d at 807).  Here, "those intuitions are at least strained by the classification of [Plaintiffs] as employees." *Id.*

In *Portland Terminal*, the Supreme Court recognized an important limiting principle of the FLSA:  An employment relationship is not established where an individual lacks any expectation of compensation, and where the individual performs work for his/her own benefit. *See* 330 U.S. at 151.  "[S]uch a construction would sweep under the Act each person who, without promise or expectation of compensation, but solely for his personal purpose or pleasure,

---

[10]   The question of whether Plaintiffs have plausibly pleaded that they are "employees" in a status case like this, where plaintiffs bear the burden of proof, differs from the "economic realities" test ("IC test") traditionally applied to determine whether an individual should be classified as an independent contractor or an employee.  *See e.g., Vanskike*, 974 F.2d at 808-09 (declining to apply IC test emphasizing control over the terms and structure of the relationship, noting that such test "harkens back to the common law distinction between an employer and an independent contractor"); *see also Armento*, 856 F. App'x. at 445 (distinguishing consideration of the economic realities for the purposes of determining whether a worker is an employee, as opposed to a volunteer, from the IC test to determine whether a worker is an employee or an independent contractor).  As discussed *supra*, Plaintiffs' repeated assertions that they performed work therapy "under the direction and control" of Defendant (*see, e.g.*, SAC ¶¶ 2, 7, 20-24) appear to reflect this confusion, as an alleged employer's control over the work performed is a factor in the IC test, but is inapposite as to the employee status of the person performing the work.  *See Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 140 n.19 (2d Cir. 2017) (listing "the degree of control exercised by employer over the workers" as a factor to determine independent contractor status) (quoting *United States v. Silk*, 331 U.S. 704, 716 (1947)).

worked in activities carried on by other persons either for their pleasure or profit." *Id.* at 152. There, the court held that a railroad company's required practical training course, for which the company provided no compensation, did not constitute employment, despite the fact that the trainees did "work in the kind of activities covered by the Act." *Id.* at 150.

As described below, Plaintiffs have not plausibly alleged that they had any expectation of compensation, nor have they plausibly alleged that the New York Corporation is the primary beneficiary of their relationship. Their failure to do so is fatal to their theory that participation in a spiritually-based residential rehabilitation program constitutes an employment relationship.

1.   <u>Plaintiffs cannot plausibly allege that they had any expectation of compensation.</u>

As the Ninth Circuit observed in *Williams v. Strickland*, "[t]he facts place this case within the holding of *Walling*[.]" 87 F.3d at 1067. Specifically, the Ninth Circuit held that Williams, an ARC Beneficiary, had "neither an express nor an implied agreement for compensation with The Salvation Army, and thus was not an employee." *Id.* The court looked in particular to the plaintiff's admittance statement, which is required to be signed by all Beneficiaries prior to entering the program. The statement specified: "I further understand that under no circumstances can this Center be under any obligation to me; and that I am a beneficiary and not an employee of this Center." *Strickland*, 87 F.3d at 1067. The Ninth Circuit distinguished *Tony & Susan Alamo Foundation v. Secretary of Labor,* 471 U.S. 290 (1985), where the Supreme Court held that "associates" who worked at a residential facility had an expectation of compensation in the form of in-kind benefits. As the Ninth Circuit noted, unlike the associates in *Alamo*, Williams' relationship with The Salvation Army was "solely rehabilitative," and his "work therapy was not performed in exchange for in-kind benefits, but rather was performed to give him a sense of self-worth, accomplishment, and enabled him to overcome his drinking problems and reenter the

economic marketplace." *Strickland*, 87 F.3d at 1067.  The court further emphasized that the fact

that The Salvation Army requires Beneficiaries to "offset the cost of [their] room, board, and

clothing . . . strongly counsels against a holding that Williams received the in-kind benefits in

exchange for his work."  *Id.* (referring to the requirement that Beneficiaries turn over certain

government-provided benefits to The Salvation Army)*; see* SAC ¶ 56.  Finally, the Ninth Circuit

noted that while Williams's stay of six months at the rehabilitation center was longer than the

one-week trainee program in *Portland Terminal*, "the beneficiaries have significantly different

needs from those of the railroad trainees and six months is not an unreasonable time commitment

to treat these needs." *Strickland*, 87 F.3d at 1068.

   Both the Ninth Circuit's analysis and holding in *Strickland* remain correct.  Beneficiaries

do not enroll in the ARC program in order to earn a living, nor do they have any expectation of

compensation upon enrollment.  The beneficiary admittance forms, quoted in *Strickland*, are

clear – Beneficiaries do not expect compensation, but rather, enroll voluntarily for the assistance

provided by the New York Corporation, which includes spiritual counseling, religious worship

and Bible study, food, housing, *and* work therapy.  These are all elements of a holistic

rehabilitation program, not a *quid pro quo.*

   The duration of the ARC program is also significant.  Plaintiffs' conclusory allegation

that Beneficiaries are "entirely dependent on Defendant" (SAC ¶ 46) represents only a snapshot

in time.  The typical rehabilitation period for Beneficiaries is approximately 180 days (SAC ¶

57).  This is vastly different than in *Alamo*, where associates were "entirely dependent upon the

Foundation for *long periods, in some cases several years*" with no specific objective or end-

point.  471 U.S. at 301(emphasis added) (internal citation omitted).  Indeed, the Alamo decision

makes clear that the associates worked for the foundation *after* their "conversion and

rehabilitation." *Id.* at 292.  ARC Beneficiaries enroll in the program with the purpose of

receiving rehabilitation and graduating from the program.  The limited length of the program

confirms the fact that Beneficiaries do not enroll in ARCs for the purpose of "enabling them to

earn a living," but rather, do so for "solely rehabilitative" purposes, without any expectation of

compensation.

      Plaintiffs' threadbare allegations that they had an expectation of compensation (SAC ¶¶

7, 53[11]) are nothing more than a "formulaic recitation" of the elements required to find coverage

under the Act and do not give rise to a reasonable inference of plausibility.  *Twombly*, 550 U.S.

at 545.  In the SAC, Plaintiffs attempt to bolster the prior iterations of their bald assertion that

Beneficiaries have an expectation of compensation: "Every person who enrolls in an ARC

understands the bargain:  work in exchange for housing, food, clothing, limited rehabilitation

services, and nominal wages . . . ."  SAC ¶ 3.  It is telling that, given a third opportunity to

provide some factual support, and despite having collected opt-in forms from 37 putative

plaintiffs[12] in addition to the five named plaintiffs, Plaintiffs remain unable to posit any factual

detail regarding these individuals' expectation of compensation upon enrolling in the program,

and instead resort to yet another vague, generalized allegation.  Plaintiffs have yet again failed to

"'nudge' [their] claims 'across the line from conceivable to plausible.'"  *Oliver v. Rio

Acquisition Partners, LLC,* 2019 WL 801952, at *2 (S.D.N.Y. Feb. 21, 2019) (quoting *Twombly*,

550 U.S. at 570).  The mere fact that the New York Corporation provides for the basic needs of

---

[11] *See e.g.*, SAC ¶ 7 ("Because ARC workers are suffered or permitted to perform tasks for Defendant's benefit, under the direction and control of Defendant's employees, and *with the expectation of receiving compensation* from Defendant for their labor, Plaintiffs and all others similarly situated are Defendant's employees under the FLSA[.]") (emphasis added); *id.* ¶ 53 ("Notwithstanding the significant benefits Defendant derives from the jobs performed by ARC workers, and the ARC workers' expectation that they will be compensated for their labor . . . .").

[12] ECF Nos. 10, 12, 22, 24, 26, 28, 33, 44, 45, 46, 51, 52, 53, 54, 56, 75, 76, 84.

its Beneficiaries, in addition to providing a rehabilitation program, does not render such provisions "compensation." *See Strickland*, 87 F.3d at 1067 (finding that benefits were provided to enable plaintiff "to pursue his rehabilitation," and not as compensation); *Fochtman*, 2022 WL 3652684, at *5 ("[T]he recovery facility's provision of sustenance was not in-kind compensation for work performed.").  And the SAC makes clear that Plaintiffs are simply unable to allege *any facts* to support their assertion that Beneficiaries had an expectation of compensation.  For example, Plaintiffs do not allege that they were told that the provision of housing, food, clothing, or a small stipend was in any way compensation for the work they were to perform as work therapy.  Nor do they allege any other explanation for why they would have such an expectation.

Furthermore, their contrary conclusory allegations are belied by the plain language of the beneficiary admittance statement that is required to be signed by each Beneficiary in the intake process.  *See Strickland*, 87 F.3d at 1065.  Plaintiffs' naked contrary assertions are thus insufficient to satisfy their burden to plausibly allege that they had an expectation of compensation with regard to their participation in the ARC program.  *Mandala v. NTT Data, Inc.*, 975 F.3d at 207 (Courts are not required "to credit 'legal conclusion[s] couched as . . . factual allegation[s]' or 'naked assertions devoid of further factual enhancement'") (quoting *Iqbal*, 556 U.S. at 678) (alteration in original).

        2.    <u>Plaintiffs fail to plausibly allege that the New York Corporation is the primary beneficiary of their rehabilitation relationship.</u>

Some courts pursue a broader inquiry into the economic reality of the relationship at issue, concluding from *Portland Terminal* that the "proper question" is whether the worker or the employer is the "primary beneficiary of the relationship."  *Vaughn II*, 957 F.3d at 145; *see also Fochtman*, 2022 WL 3652684 (holding that individuals who performed work at for-profit

commercial ventures as part of a court-ordered drug and alcohol recovery program were the primary beneficiaries of the relationship, and therefore not employees).

Plaintiffs are not employees under this test because rehabilitation is the "central purpose[] underlying the relationship" between Beneficiaries and the New York Corporation, rendering Plaintiffs the primary beneficiaries of the ARC program. *Vaughn v. Phoenix House Found., Inc.*, 2019 WL 568012, at *4 (S.D.N.Y. Feb. 12, 2019) ("*Vaughn I*"), *aff'd sub nom. Vaughn II,* 957 F.3d 141.

The Second Circuit recently adopted the primary beneficiary test set forth in *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, to determine whether a plaintiff had plausibly alleged employee status with regard to work therapy performed as part of a rehabilitation program. *See Vaughn II*, 957 F.3d at 145-46. This test, which was originally used to determine whether an intern constituted an employee under the FLSA, requires a court to evaluate a "non-exhaustive set of considerations," while maintaining the "'flexibility to [permit] examin[ation] of the economic reality' of the relationship." *Id.* at 145 (quoting *Glatt*, 811 F.3d at 536) (alteration in original).

In *Vaughn II,* under factual circumstances similar to those alleged here,[13] the Second Circuit affirmed the dismissal of the plaintiff's FLSA and New York Labor Law claims on the basis of the district court's "careful analysis of the *Glatt* factors" and the "significant benefits" that the plaintiff received from his rehabilitation program, which included "'food, a place to live, therapy, vocational training, and jobs that kept him busy and off drugs.'" *Id.* at 146.

---

[13] Vaughn was allegedly required to perform work therapy in eight-hour shifts, six days per week as part of a court-mandated rehabilitation program. *Vaughn I*, 2019 WL 568012 at *1. He performed "unpaid, menial work" at the Phoenix House facilities and a related warehouse. *Id.* He remained in the program for over two years, most of which was spent in the in-patient program. *Id.*

14

The Second Circuit affirmed the district court's finding that three *Glatt* factors in particular weighed "'strongly against finding that Vaughn was an employee.'"  *Id.*  These were: (1) the plaintiff's lack of any expectation of compensation; (2) the extent to which the duration of the program was limited to the period in which the plaintiff was engaged in "beneficial learning" or rehabilitative activity; and (3) the mutual understanding that the program was conducted without entitlement to a paid job.  *Id.* at 145.

The same analysis applies here.  *First*, as discussed above, Plaintiffs do not – and cannot – plausibly allege that they had any expectation of compensation upon enrolling in the ARC.[14] *Second*, as Plaintiffs acknowledge, Beneficiaries typically remain in the program until they "graduate," *i.e.,* only for the duration of their rehabilitation needs.  SAC ¶ 57.  While Plaintiffs assert that that the duration of the program is "unrelated" to Beneficiaries' individual needs, they also note that some Beneficiaries are required to stay longer for infractions of ARC rules, while others return after graduating from or otherwise leaving the program.  SAC ¶¶ 57-58.  Such circumstances are similar to those alleged in *Vaughn*, where the plaintiff initially agreed to enter the rehabilitation program for a fixed period, but was later sent back to the facility after violating the conditions of his outpatient treatment.  *See Vaughn I*, 2019 WL 568012, at *6.  As the district court found in *Vaughn I*, adjusting the program length and/or permitting reenrollment where individuals "still [stand] to benefit from the . . . program" is in fact an indication that the program is "tailored to . . . individual treatment needs."  *Id.   Third*, and finally, Plaintiffs do not allege that Beneficiaries have any expectation of entitlement to a paid job after completing the program. As in *Vaughn*, these three factors weigh heavily in favor of finding that Plaintiffs are the primary beneficiaries of the program.

---

[14] In its analysis of this factor, the district court cited with approval the Ninth Circuit's decision in *Strickland.  Vaughn I*, 2019 WL 568012, at *5.

In *Vaughn II,* the Second Circuit found only one factor weighed in favor of finding an employment relationship:  the extent to which the work complements, as opposed to displaces, the work of paid employees.  The court noted, however, that this factor should be given less weight in the context of a facility that operates for rehabilitative purposes.  *Id*. at 146.  While not necessary for Defendant to prevail on the pending motion to dismiss, it is noteworthy that this distinction applies here as well.[15]  Importantly, while the New York Corporation's thrift stores are "revenue-generating" (*see, e.g.*, SAC ¶¶ 2, 38, 41), they are not for-profit commercial ventures, but rather only exist to fund the operation of the ARCs.  *See* "Thrift Stores: Doing the Most Good," The Salvation Army, https://satruck.org/Home/NationalRehabilitation (accessed July 5, 2022) ("[T]he ARC program is made possible through the generosity of those who donate goods that can be sold in our family thrift stores . . . .").

The remaining factors of the *Glatt* test, which the Second Circuit found to provide "mixed guidance" in *Vaughn II,* focus on whether the work is tied to the educational purpose of the internship.  These factors "are not directly relevant" to the rehabilitation context and "do not weigh as heavily as they do in the internship context," as the district court recognized in *Vaughn I.* 2019 WL 568012, at *7.  However, to the extent the Court seeks to apply these factors, it is evident that work therapy is not only closely tethered to, but is indeed a core means of achieving, the therapeutic and rehabilitative purposes of the program.

Plaintiffs' unsupported and vague allegations regarding the quality of the program do not change the fundamental *nature* of the program.  First, Plaintiffs' allegations that the program offers "very few rehabilitative services" (SAC ¶ 50) and that the work therapy "leaves little time for the ARC workers to focus on rehabilitation" (SAC ¶ 37), fail to recognize the very premise

---

[15] *See* supra at *Section* I.B.1 (Plaintiffs' inability to plead an expectation of compensation is determinative in this matter).

of the program—that work therapy is *itself* a rehabilitative service.  That Plaintiffs may not have found work therapy to be the "optimal learning experience" does not "transform [the New York Corporation] into the primary beneficiary of the relationship."  *See Vaughn I*, 2019 WL 568012, at *8.  Similarly, Plaintiffs' allegation that "the jobs performed by ARC workers are not in furtherance of any educational program" (SAC ¶ 37) is at odds with the court's finding in *Vaughn I* (as well as *Strickland*).  Indeed, the district court in *Vaughn I* disregarded similar allegations as implausible, noting that although the plaintiff "may have preferred to acquire 'skills that could translate into stable (*i.e.*, not menial, low wage) employment,' [citation omitted] the jobs he was assigned undoubtedly furthered the development of the skill of self-sufficiency . . . ."  *Vaughn I*, 2019 WL 568012, at *8; *see also Danneskjold*, 82 F.3d at 43 ("Prisoners may thus be ordered to cook, staff the library, perform janitorial services, [or] work in the laundry ... Such work occupies prisoners' time that might otherwise be filled by mischief [and] it trains prisoners in the discipline and skills of work[.]").  Finally, Plaintiffs' allegations regarding the conditions of the facilities and strict rules by which Beneficiaries are required to abide during work therapy, SAC ¶¶ 34-35, accepted as true, still do not render them employees.  The primary beneficiary test does not hinge upon "the nature and quality of [Beneficiaries'] treatment[,]" but rather, takes into account the "central purposes underlying the relationship" between Beneficiaries and the New York Corporation, *i.e.* the Beneficiaries' pursuit of rehabilitation, and the "significant benefits" the program affords.  *Vaughn I*, 2019 WL 568012, at *5, *8-9.

*Vaughn II* is controlling here.  The relevant factors clearly show that the Plaintiffs cannot plausibly allege an employment relationship because they were the primary beneficiaries of their relationship with the New York Corporation.  Additionally, Plaintiffs' allegations that the work therapy performed by Plaintiffs "directly, substantially, and primarily benefit" the New York

Corporation (SAC ¶¶ 38, 53) are not plausible because they fail to address the very reason for which the Plaintiffs choose to enroll in the program and engage in work therapy, *i.e.* for their own rehabilitation.  Notably, even Plaintiffs' description of the work therapy assignments performed by the named Plaintiffs (SAC ¶¶ 20-24) contains no factual details sufficient to support the bare assertion that these activities were performed "primarily" for the New York Corporation's benefit (*see, e.g.*, SAC ¶ 33).  Moreover, even assuming, *arguendo*, that the New York Corporation derived some benefit, financial or otherwise, this fact would not render Plaintiffs' claims plausible or change the outcome of the primary beneficiary test.  *See, e.g.*, *Velarde v. GW GJ, Inc.*, 914 F.3d 779, 784-85 (2d Cir. 2019) (reiterating that *Portland Terminal* "does not imply that the FLSA renders any organization that receives some immediate benefit from unpaid labor 'an employer' of the individual from which the benefit is derived"); *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 521 (6th Cir. 2011) ("Any benefits Laurelbrook derives from its students are 'secondary to its religious mission' of providing academic and practical training."); *Fochtman*, 2022 WL 3652684, at *5 ("[W]e cannot gainsay that [defendant] received an immediate advantage from the work of the DARP participants.  But the overriding consideration is that the DARP participants undertook the recovery program for their own purposes . . . .").

Given the personal benefits to Plaintiffs and the overall purpose and effect of work therapy as part of a rehabilitative program, Plaintiffs unquestionably "work for their own advantage on the premises of another."  *Portland Terminal*, 330 U.S. at 152.  Plaintiffs make no contrary plausible allegations.  Accordingly, as the primary beneficiaries of their relationship with the New York Corporation, Plaintiffs cannot be deemed to be employees under the FLSA.

18

II.     **The Second Amended Complaint Cannot Plausibly Allege Employee Status Under New York, Pennsylvania, and Maine Laws Because the Standards for Employee Parallel the FLSA.**

Plaintiffs' allegations under the state laws fail because these state statutes mirror the FLSA in their standard for defining an "employee."  New York law defines "employee" as "any individual employed or permitted to work by an employer. . . ."  N.Y. Lab. Law § 651 (McKinney 2022); *see also* N.Y. Lab. Law § 190 (McKinney 2022) (defining "employee" as any person employed for hire by an employer in any employment").  Notably, however, Section 651 includes an express exception for "any individual who is employed or permitted to work . . . in or for such a religious or charitable institution, which work is incidental to or in return for charitable aid conferred upon such individual and not under any express contract of hire[.]" *Id.* Work therapy performed by ARC Beneficiaries is "incidental to . . . charitable aid conferred upon [them]" and they are not under any express contract of hire, thus excluding them from coverage under the law.

Moreover, the Second Circuit has held that "[b]ecause the [NYLL and FLSA] define 'employee' in nearly identical terms, we construe the NYLL definition as the same in substance as the definition in the FLSA."  *Glatt*, 811 F.3d at 534; *Velarde*, 914 F.3d at 783.  Because Plaintiffs cannot plausibly plead that they are employees of The New York Corporation under the FLSA or New York Labor Law, Counts Two, Three, and Four of the SAC should be dismissed.

The Pennsylvania Minimum Wage Act ("PMWA") too "substantially parallels" the FLSA, defining "employe" [sic] as "any individual employed by an employer."  *Kelly-Myers v. Mercy Health Sys. of Se. Penn.*, 2017 WL 4347605, at *7 (E.D. Pa. Sept. 29, 2017); 43 Pa. Stat. Ann. § 333.103 (West 2022).  S*ee also McKinney v. Chester Cnty.*, 2021 WL 409975, at *3 (E.D. Pa. Feb. 5, 2021) ("'Because of the similarities between the PMWA and the FLSA,

Pennsylvania courts analyze overtime and minimum wage violations of the PMWA and the FLSA under the same framework.'").  Plaintiffs' failure to plausibly allege employee status under the FLSA is fatal to their minimum wage and overtime claims under the PMWA, and thus Counts Five and Ten should be dismissed.

Plaintiffs' claims under both the Maine Minimum Wage Law and the Maine Wage Payment Law also fail.  Section 663 of the Maine Minimum Wage Law defines "employee" as "any individual employed or permitted to work by an employer."  26 M.R.S. § 663.  This definition, which "closely track[s] . . . the FLSA," applies to Section 664, the minimum wage and overtime statutes.  *Affo v. Granite Bay Care, Inc.,* 2013 WL 2383627, at *7 (D. Me. May 30, 2013) (drawing a distinction between the terms "employ" and "employee", which are defined in the section and mirror the FLSA, and "employer," for which "the Maine legislature did not adopt the FLSA definition").  Section 629 of the Maine Wage Payment Law does not include a definition of "employee"; however, courts have applied the definition from the Maine Minimum Wage Law.  *See Scovil v. FedEx Ground Package Sys., Inc.,* 886 F. Supp. 2d 45, 51 (D. Me. 2012) ("I see nothing to lead me to conclude that the Maine Court would define the term 'employee' differently for sections 626, 629 and 664. Indeed, it would create havoc for employers and commerce if the standards for these provisions were different . . . .").  This reasoning applies equally to Section 621-A.  For this reason, Plaintiffs cannot plausibly plead that they are employees under Maine law, and Counts Six, Seven, Eight, and Eleven should be dismissed.

## CONCLUSION

For all of these reasons, the New York Corporation respectfully requests that the Court dismiss the Second Amended Complaint.

Date:  September 8, 2022

Respectfully submitted,

CROWELL & MORING LLP

/s/ *Sadina Montani*
Sadina Montani*
Thomas P. Gies*
Andrew W. Bagley*
Katie R. Aber
Rachel S. Lesser*
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 624-2500
Smontani@crowell.com
Tgies@crowell.com
Abagley@crowell.com
Kaber@crowell.com
Rlesser@crowell.com

*Attorneys for The Salvation Army, a New York nonprofit corporation*

*Admitted pro hac vice*