# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ROBERT GEISER, SHAUN HALLORAN, AVERY ACKER, CHRISTINA AQUILINO, and JOSHUA FRASER, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>THE SALVATION ARMY, a New York nonprofit corporation,<br><br>        Defendant. | Case No.: 1:22–cv–01968-JMF |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................... 1

II.   FACTUAL BACKGROUND ..................................................................................... 2

III.  STANDARD OF REVIEW ....................................................................................... 5

IV.  ARGUMENT ............................................................................................................ 7

     A.    Plaintiffs have plausibly alleged that they were TSA employees. .......................... 7

          1.    Courts have identified the two inquiries at the heart of the economic reality test in this case. .............................................. 7

          2.    Plaintiffs expected benefits and a small stipend as compensation for their work. ...................................................... 10

          3.    Plaintiffs' work primarily benefited TSA by earning significant, immediate revenue, outweighing the ARC's limited rehabilitation services....................................................... 13

          4.    The cases cited by Defendants are readily distinguishable..................... 18

          5.    The *Brock* factors confirm Plaintiffs' employment status. ...................... 21

     B.    Plaintiffs have adequately pled their state law claims. ........................................ 23

V.   CONCLUSION........................................................................................................ 25

# TABLE OF AUTHORITIES

**Page**

<u>**CASES**</u>

*Acosta v. Cathedral Buffet, Inc.*,
   887 F.3d 761 (6th Cir. 2018) ......................................................................................... 26

*Archie v. Grand Cent. P'ship, Inc.*,
   997 F. Supp. 504 (S.D.N.Y. 1998) .......................................................................... 12, 23

*Armento v. Asheville Buncombe Cmty. Christian Ministry, Inc.*,
   856 F. App'x 445 (4th Cir. 2021) ................................................................................. 25

*Axel v. Field Motorcars of Fla., Inc.*,
   711 F. App'x 942 (11th Cir. 2017) ............................................................................... 11

*Bansept v. G & M Auto.*,
   434 F. Supp. 3d 253 (E.D. Pa. 2020) ........................................................................... 28

*Barfield v. N.Y.C. Health & Hosps. Corp.*,
   537 F.3d 132 (2d Cir. 2008) ...................................................................................... 8, 9

*Barrentine v. Ark.-Best Freight Sys., Inc.*,
   450 U.S. 728 (1981) ...................................................................................................... 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................. 6, 13

*Bradford v. Naples Causeway Dev., LLC*,
   No. 2:21-CV-00015-NT, 2022 WL 1538671 (D. Me. May 16, 2022) ......................... 29

*Brock v. Superior Care, Inc.*,
   840 F.2d 1054 (2d Cir. 1988) .................................................................................... 8, 27

*Carter v. Dutchess Cmty. Coll.*,
   735 F.2d 8 (2d Cir. 1984) ............................................................................................... 9

*Cazares v. 2898 Bagel & Bakery Corp.*,
   No. 18-CV-5953 (AJN), 2020 WL 2832766 (S.D.N.Y. May 31, 2020) ....................... 28

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ........................................................................................... 6

*Chao v. Gotham Registry, Inc.*,
   514 F.3d 280 (2d Cir. 2008) ........................................................................................... 9

*Copeland v. C.A.A.I.R., Inc.*,
   No. 17-CV-564-TCK-JFJ, 2019 WL 4307125 (N.D. Okla. Sept. 11, 2019) ............. 19, 27, 28

*Danneskjold v. Hausrath*,
   82 F.3d 37 (2d Cir. 1996) ................................................................................ 16, 18, 20, 26

*Dejesus v. HF Mgmt. Servs, LLC*,
   No. 12 Civ. 1298 (ERK) (RML), 2012 WL 5289571 (E.D.N.Y. Oct. 23, 2012) ................... 30

*DeJesus v. HF Mgmt. Servs., LLC,*
    726 F.3d 85 (2d Cir. 2013)........................................................................................ 30

*Donovan v. Tony & Susan Alamo Found.,*
    567 F. Supp. 556 (W.D. Ark. 1982).......................................................................... 10

*Donovan v. Tony & Susan Alamo Found.,*
    722 F.2d 397 (8th Cir. 1983) ............................................................................. 10, 20

*Doyle v. City of New York,*
    91 F. Supp. 3d 480 (S.D.N.Y. 2015)......................................................... 17, 19, 21, 25

*Earl v. Bell House, LLC,*
    No. 8:20-CV-129, 2022 WL 394731 (D. Neb. Feb. 9, 2022).............................. 12, 13, 18, 27

*Elwell v. Weiss,*
    No. 03-CV-6121, 2007 WL 2994308 (W.D.N.Y. Sept. 29, 2006)................................... 21, 27

*Fochtman v. Hendren Plastics, Inc.,*
    No. 20-2061, 2022 WL 3652684 (8th Cir. Aug. 25, 2022) ............................... 17, 25

*Freeman v. Key Largo Volunteer Fire & Rescue Dep't,*
    494 F. App'x 940 (11th Cir. 2012) ........................................................................... 26

*Gjoni v. Orsid Realty Corp.,*
    No. 14 CIV. 8982 GBD, 2015 WL 4557037 (S.D.N.Y. July 22, 2015).................................. 30

*Glatt v. Fox Searchlight Pictures, Inc.,*
    811 F.3d 528 (2d Cir. 2016)..................................................................... 16, 17, 18, 19

*Godoy v. Rest. Opportunity Ctr. of N.Y., Inc.,*
    615 F. Supp. 2d 186 (S.D.N.Y. 2009)........................................................................ 27

*Guevara v. I.N.S.,*
    902 F.2d 394 (5th Cir. 1990) .................................................................................. 26

*Harker v. State Use Indus.,*
    990 F.2d 131 (4th Cir. 1993) .................................................................................. 26

*Hollins v. Regency Corp.,*
    867 F.3d 830 (7th Cir. 2017) .................................................................................. 24

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,*
    146 F.3d 66 (2d Cir. 1998)........................................................................................ 7

*Isaacson v. Penn. Cmty. Servs., Inc.,*
    450 F.2d 1306 (4th Cir. 1971) ................................................................................ 25

*Jones v. IndustryPro.com, Inc.,*
    No. 1:20-CV-1412-SCJ, 2021 WL 2593768 (N.D. Ga. Mar. 2, 2021)................................... 24

*Juarez v. 449 Rest., Inc.,*
    29 F. Supp. 3d 363 (S.D.N.Y. 2014)............................................................................ 8

*Kavazanjian v. Naples,*
    No. 06-CV-3390 (JG), 2006 WL 2795220 (E.D.N.Y. Sept. 26, 2006) ................................. 26

iii

*Klick v. Cenikor Found.*,
    No. 4:19-CV-01583, 2022 WL 1028065 (S.D. Tex. Apr. 6, 2022) ........................................ 13

*Marshall v. UBS Fin. Servs., Inc.*,
    No. 14 Cv. 4384(JGK), 2015 WL 4095232 (S.D.N.Y. July 7, 2015) ..................................... 15

*Mendel v. City of Gibraltar*,
    727 F.3d 565 (6th Cir. 2013) ................................................................................................... 26

*Ndambi v. CoreCivic, Inc.*,
    990 F.3d 369 (4th Cir. 2021) ................................................................................................... 26

*Perez v. TLC Residential, Inc.*,
    No. C 15-02776 WHA, 2016 WL 6143190 (N.D. Cal. Oct. 21, 2016) ..................... 12, 13, 23

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010) ......................................................................................................... 6

*Pray v. Long Island Bone & Joint*, LLP,
    No. 14 Civ. 5386 (SJF) (SIL), 2016 WL 9455557 (E.D.N.Y. Aug. 11, 2016) ...................... 30

*Schleicher v. Salvation Army*,
    518 F.3d 472 (7th Cir. 2008) ..................................................................................................... 7

*Scovil v. FedEx Ground Package Sys., Inc.*,
    886 F. Supp. 2d 45 (D. Me. 2012) .......................................................................................... 29

*Solis v. Laurelbrook Sanitarium & Sch., Inc.*,
    642 F.3d 518 (6th Cir. 2011) ................................................................................................... 24

*Starr v. Sony BMG Music Ent.*,
    592 F.3d 314 (2d Cir. 2010) ..................................................................................................... 5

*Steelman v. Hirsch*,
    473 F.3d 124 (4th Cir. 2007) ................................................................................................... 26

*Tony & Susan Alamo Foundation v. Secretary of Labor*,
    471 U.S. 290 (1985) ......................................................................................................... passim

*Trejos v. Edita's Bar & Rest., Inc.*,
    No. CV-08-1477 (ARR), 2009 WL 749891 (E.D.N.Y. Mar. 17, 2009) ................................. 15

*Vanskike v. Peters*,
    974 F.2d 806 (7th Cir. 1992) ................................................................................................... 26

*Vaughn v. Phoenix House Found., Inc.*,
    No. 14-CV-3918 (RA), 2019 WL 568012 (S.D.N.Y. Feb. 12, 2019) ....................... 16, 17, 18

*Vaughn v. Phoenix House N.Y. Inc.*,
    957 F.3d 141 (2d Cir. 2020) ............................................................................................. passim

*Vaughn v. Phoenix House New York Inc.*,
    722 F. App'x 4 (2d Cir. 2018) ................................................................................................. 16

*Velarde v. GW GJ, Inc.*,
    914 F.3d 779 (2d Cir. 2019) ............................................................................................. 11, 24

*Velez v. Sanchez*,
   693 F.3d 308 (2d Cir. 2012) ........................................................................................... 9

*Walker v. Freedom Rain, Inc.*,
   No. 2:15-cv-00274-MHH, 2017 WL 897592 (N.D. Ala. Mar. 7, 2017) .............. 13, 19, 21, 23

*Walling v. Portland Terminal Co.*,
   330 U.S. 148 (1947) ............................................................................................... passim

*Williams v. Strickland*,
   87 F.3d 1064 (9th Cir. 1996) ................................................................................ passim

*Zheng v. Liberty Apparel Co. Inc.*,
   355 F.3d 61 (2d Cir. 2003) ............................................................................................. 9

## **STATUTES**

N.Y. Lab. Law § 651 ............................................................................................................ 23

## **RULES**

Fed. R. Evid. 201(b) ............................................................................................................. 6

## I.    INTRODUCTION

Plaintiffs and the proposed class ("ARC workers") are or were participants in The Salvation Army's ("Defendant" or "TSA") residential adult rehabilitation centers ("ARCs"). While enrolled in the ARCs, TSA requires ARC workers to perform at least 40 hours per week of grueling work to support TSA's thrift store operations, which generate millions in revenue each year and compete with other businesses selling used goods. In exchange for their labor, TSA provides ARC workers housing, food, clothing, limited rehabilitation services, and up to $30 per week, which in total is far less than the federal and state minimum wages at issue in this case.

TSA's motion to dismiss Plaintiffs' complaint on the grounds that Plaintiffs were not TSA's employees should be denied. The Court need not look beyond the Supreme Court's seminal decision in *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290 (1985), a remarkably similar case that controls the outcome here, but which Defendant mentions only in passing. Like the workers the Supreme Court held were employees in *Alamo*, Plaintiffs are dependent on a residential rehabilitation program, operated by a religious non-profit organization, that provides program participants with in-kind benefits of housing, food, clothing, and meager wages in exchange for their full-time labor for the organization's commercial enterprises that compete with other similar businesses.

TSA primarily relies on *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141 (2d Cir. 2020) ("*Vaughn II*"), but that case involved facts that are readily distinguishable from those alleged in Plaintiffs' complaint. In *Vaughn II*, the plaintiff conceded that he had no expectation of compensation. Not so here, where Plaintiffs understood that they were required to work to receive cash and in-kind benefits. Additionally, in *Vaughn II*, the district court found that the plaintiff was not an employee because he received the "significant benefit" of being permitted to participate in

rehabilitation in lieu of a jail sentence. In contrast, this case consists of ARC participants who did *not* enroll to avoid incarceration, thus receiving no similar benefit. Finally, unlike the plaintiff in *Vaughn II*, who performed non-commercial work at his rehabilitation center, Plaintiffs' work here derived a profit for a commercially competitive thrift store. None of the other cases upon which TSA relies counsel in favor of, let alone require, a different result than *Alamo*.

Beyond TSA's failure to address *Alamo*, TSA predicates its motion primarily on extrinsic evidence and unsupported statements that are not part of Plaintiffs' complaint and that the Court cannot consider on a Rule 12(b)(6) motion. And TSA demands a level of factual granularity and citation not required at the pleadings stage. When viewing Plaintiffs' well-pled facts through the lens of *Alamo*, Plaintiffs have adequately alleged that they were TSA's employees and that TSA willfully failed to pay federal and state minimum wage.

## II.    FACTUAL BACKGROUND

TSA maintains approximately 36 ARCs, residential adult rehabilitation centers and adult rehabilitation programs, in the Eastern United States. Second Am. Compl. (SAC) ¶¶ 1, 26. Thousands of vulnerable individuals—people who are poor, unhoused, sick, suffering from addiction, or simply have nowhere else to go—enroll in Defendant's ARCs annually. *Id.* ¶¶ 1, 30.

TSA requires that to enroll in and remain at an ARC, and in exchange for room, board, donated clothing, rehabilitative services, and nominal wages of $5 to $30 per week,[1] all ARC workers must perform assigned tasks for TSA for at least forty hours per week, and frequently more. *Id.* ¶¶ 2-3, 31, 45. ARC workers understand and expect that, in exchange for their labor, TSA will provide them with those in-kind benefits and compensation. *Id.* ¶ 31. ARC workers must

---

[1] Typically, some of the wages are paid not in cash, but rather in the form of "canteen cards" redeemable only at Defendant's canteen. *Id.* ¶ 45.

live on-site, in assigned dormitory settings with shared showers, toilets, and sinks. *Id.* ¶ 55. While enrolled in an ARC program, ARC workers are reliant on Defendant for food, shelter, clothing, and money because they cannot perform work for other employers. *Id.* ¶¶ 31, 45-48, 55. The wages ARC workers receive are not enough to pay for all basic necessities, such as essential hygiene products, or to save money for after ARC workers leave the program. *Id.* ¶ 48.

The Salvation Army touts the work requirement, explaining that a person cannot enroll in an ARC program if he or she is not "[a]ble to perform a work therapy assignment for eight hours a day." *Id.* ¶ 31. Indeed, this work requirement is the cornerstone of all of TSA's ARCs. *Id.* ¶ 2.

The jobs performed by ARC workers substantially and primarily benefit, and are essential to the operation of, TSA's multi-million-dollar commercial thrift store operations. *Id.* ¶ 38. As of 2020, there were more than 1,000 Salvation Army thrift stores across the country, which generated nearly $600 million in revenue in 2019. *Id.* ¶ 39. TSA's thrift stores, which compete for business with other commercial enterprises selling used goods that pay all their employees at least minimum wage, could not operate without the labor of ARC workers. *Id.* ¶¶ 2, 38. If TSA did not receive the benefit of ARC workers' sub-minimum wage labor, TSA would have to pay additional workers in compliance with minimum wage laws to perform this work. *Id.* ¶¶ 6, 41. TSA also employs other individuals, who are not ARC workers, to work side-by-side with ARC workers performing substantially the same duties for at least minimum wage. *Id.* ¶ 41. TSA advertises for paid positions at ARCs, in which it describes job responsibilities, like sorting, cleaning, or tagging donations/merchandise, that are substantially the same jobs as performed by ARC workers. *Id.*

ARC workers perform unskilled tasks that are often physically grueling and sometimes dangerous, including loading, unloading, and hauling heavy furniture, home appliances, and other donations from trucks and sorting through donated clothing and other goods. *Id.* ¶ 33. ARC

workers often perform these tasks under harsh, unsanitary, and unhealthy working conditions. *Id.* ¶ 34. For example, ARC workers frequently are assigned to work in Defendant's warehouses, which may reach extreme temperatures; which may be filled with bedbugs, cockroaches, or rodents; which may have dust buildup that affects air quality; and where ARC workers may be required to sort through donated clothing that is soaked in bodily fluids. *Id.*

TSA controls all aspects of the work, including job assignments and duties; schedules; work locations; standards of performance; rates of pay (or lack thereof); and training (if any). *Id.* ¶ 42. Supervisors also enforce strict rules regarding ARC workers' conduct on the job, including rules prohibiting ARC workers from speaking to fully paid employees or ARC workers of the opposite sex. *Id.* ¶ 35. Jobs are assigned and overseen by supervisors who are TSA's fully paid employees. *Id.* ¶¶ 42.

The jobs performed by ARC workers are not in furtherance of any educational program and do not primarily further ARC workers' rehabilitation. *Id.* ¶ 37. In fact, TSA requires ARC workers to work so many hours during the week that they have little time or energy to focus on rehabilitation. *Id.* ARC workers participate in group meetings that are "one size fits all" and not directed at addressing ARC workers' individual addiction problems. *Id.* ¶¶ 50-51. They are typically led by untrained instructors, including former ARC workers and ARC workers still in the program. *Id.* Many of the classes ARC workers are required to attend consist of primarily or even exclusively religious instruction. *Id.* ¶ 50. TSA's policies preclude ARC workers from receiving FDA-approved, clinically-effective medication-assisted treatment, which has been shown to reduce the risk of relapse and overdose for patients with opioid and alcohol use disorders. *Id.* The number of hours ARC workers spend on services purportedly meant for rehabilitation and recovery pales in comparison to the number of hours they are required to work for TSA's commercial thrift

stores. *Id.* ¶ 51. Moreover, TSA does not provide ARC workers with job or skills training, nor any other training that would further ARC workers' employment once they leave the program. *Id.* ¶ 37.

ARC workers who miss scheduled shifts, even for legitimate reasons like illness or work-related injury, are required to make up those hours at a later date. *Id.* ¶ 44. ARC workers who refuse or are unable to work forty hours per week can be expelled from the ARC, even if the worker follows all other program rules. *Id.* ¶ 43. TSA routinely expels workers who become unable to perform assigned tasks because of illness or even injury suffered while working for Defendant. *Id.* Many ARC workers leave or are expelled from the program prior to completion. *Id.* ¶ 57. ARC workers otherwise stop performing jobs for Defendant when they complete the ARC program (i.e., "graduate"), typically after 180 days. *Id.*

Notwithstanding the significant benefits TSA derives from the ARC workers' labor and the ARC workers' expectation that they will be compensated for their work, TSA has for many years maintained a uniform and unlawful policy of refusing to treat ARC workers as employees or pay them minimum wage. *Id.* ¶ 53.

## III.   STANDARD OF REVIEW

On a motion to dismiss, the Court must "accept[] all [nonconclusory] factual allegations as true," even if "doubtful in fact." *Starr v. Sony BMG Music Ent.*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). TSA repeatedly misconstrues this standard by criticizing Plaintiffs for their "unsupported" and "vague" allegations. *E.g.*, Defs.' Mem. of Law ("Mot."), Dkt. 87, at 16. But Plaintiffs have no obligation to plead "detailed factual allegations" and certainly do not need to plead citations for their factual assertions. *See Twombly*, 550 U.S. at 555-56 (While "[f]actual allegations must be enough to raise a right to relief above the speculative level," there is no "probability requirement at the pleading stage.").

Moreover, in ruling on a motion to dismiss, the district court may not consider factual

claims that are neither supported by the complaint nor the proper subjects of judicial notice. *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,* 602 F.3d 57, 64 (2d Cir. 2010).[2] Throughout its brief, Defendant relies on factual findings from *Williams v. Strickland*, 87 F.3d 1064 (9th Cir. 1996), an out-of-circuit case decided over 25 years ago that involved different parties,[3] at a different stage of litigation,[4] and a different factual record.[5] Defendant does not ask this Court to take judicial notice of *Williams*, but even if it did, the Court can only take judicial notice of facts "outside the trial record that are 'not subject to reasonable dispute.'" *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (quoting Fed. R. Evid. 201(b)). "Facts adjudicated in a prior case do not meet either test of indisputability contained in Rule 201(b)," and are therefore not proper for judicial notice. *Id.* Defendant's citations to the facts in *Williams* have no basis in, and often are directly contradicted by, Plaintiffs' allegations. *Compare* Mot. at 2, 4, 7, 10 (relying on *Williams* to assert that the "sole[]" purpose of "work therapy" is rehabilitative), *with* SAC ¶¶ 31-34, 37-38, 41, 43-44 (alleging that the work was not primarily rehabilitative); *compare* Mot. at 4, 10, 11, 13 (relying heavily on *Williams*'s discussion of an "admittance statement"), *with* SAC ¶¶ 1-65 (making no mention of the same, or any, admittance statement). Therefore, the Court should not consider the factual findings from *Williams*.[6] *See Int'l Star Class Yacht Racing Ass'n*, 146 F.3d at 70.

---

[2] A court cannot consider additional documents referenced by a defendant without converting the 12(b)(6) motion to a motion for summary judgment, for which proper notice must be provided. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002).

[3] The defendant in *Williams* was Major Charles Strickland, who was named in his individual capacity and in his official capacity as the Administrator of the Salvation Army Adult Rehabilitation Center, San Francisco Chapter. *See* 87 F.3d at 1064. TSA admits that the San Francisco ARC is operated by Defendant's "affiliate," not Defendant. Mot. at 2.

[4] *Williams* was a summary judgment decision where the district court weighed the factual record after discovery. 87 F.3d at 1065.

[5] *See* Section IV.A.4 at 18-20 *infra*.

[6] Indeed, if it were appropriate to accept facts from other cases in deciding a motion to dismiss, it would be more

Nor should the Court credit facts from TSA's website or Defendant's unsupported assertions. *E.g.*, Mot. at 7, 11, 16-17 (raising uncited claims about work therapy's role within the rehabilitation program); *id.* at 16 (claiming that TSA's thrift stores "only exist to fund the operation of the ARCs" while citing a statement on its website that does not support this proposition). In analyzing the Motion, the Court may only consider the allegations in the SAC.

## IV.    ARGUMENT

### A.    Plaintiffs have plausibly alleged that they were TSA employees.

Defendant moves to dismiss Plaintiffs' claims based on a single, incorrect argument: that Plaintiffs have failed to plausibly allege ARC workers are TSA's employees. TSA's Motion should be denied because Defendant misconstrues the test for employment, effectively ignores the Supreme Court's controlling decision in *Alamo*, and overlooks Plaintiffs' specific, well-pled allegations.

### 1.    Courts have identified the two inquiries at the heart of the economic reality test in this case.

To determine whether an individual qualifies as an employee under the Fair Labor Standards Act (FLSA), courts examine "the totality of the circumstances" with the ultimate goal of determining "the 'economic reality' of a particular employment situation." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008); *accord Alamo*, 471 U.S. at 301 ("The test of employment under the [FLSA] is one of 'economic reality.'"). "The Second Circuit has overseen a proliferation of multi-factor tests that aid in determining who counts as an employer" in different contexts.[7] *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014). The

---

appropriate to heed the Seventh Circuit's more recent observation, in a case applying the ministerial exception to ARC administrators, that ARC "residents . . . undergoing work therapy [are] employees of the thrift shops." *Schleicher v. Salvation Army*, 518 F.3d 472, 477 (7th Cir. 2008).

[7] *See, e.g.*, *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058-59 (2d Cir. 1988) (test to distinguish employees

Second Circuit has cautioned, however, that cases that do not fit neatly into pre-existing tests require a more flexible analysis to capture the true nature of the working relationship. *E.g.*, *Barfield*, 537 F.3d at 142-43 (noting the necessity of "flexibility" "based on the factual challenges posed by particular cases").

In determining what factors to consider, the Court should remember that "[t]he FLSA was intended to protect workers from substandard conditions and the fair-minded employer from unfair competition." *Velez v. Sanchez*, 693 F.3d 308, 325 (2d Cir. 2012) (quotation marks omitted). "In service of the statute's remedial and humanitarian goals, the Supreme Court consistently has interpreted the Act liberally and afforded its protections exceptionally broad coverage." *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 285 (2d Cir. 2008).

The two primary factors to consider when assessing whether Plaintiffs have adequately pled an employment relationship with TSA—whether the ARC workers expected compensation for their labor and the benefit received by TSA from the work performed—are set forth in controlling Supreme Court precedent: *Alamo* and *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947).

In *Alamo*, a case on all fours with this one, a nonprofit religious foundation derived income from operating numerous commercial businesses, including retail clothing and grocery outlets. 471 U.S. at 292. The operations were primarily staffed by "associates," "most of whom were drug addicts, derelicts, or criminals before their conversion and rehabilitation by the Foundation." *Id.* The associates' "work in the . . . commercial businesses operated by the foundation" was considered "part of their rehabilitation." *Donovan v. Tony & Susan Alamo Found.*, 722 F.2d 397,

---

from independent contractors); *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 72 (2d Cir. 2003) (discussing joint employment factors); *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (articulating a four-factor test).

399 (8th Cir. 1983). The foundation provided, and the workers expected, "food, shelter, clothing, transportation and medical benefits," as well as "small amounts of cash money." *Alamo*, 471 U.S. at 293; *Donovan v. Tony & Susan Alamo Found.*, 567 F. Supp. 556, 562 (W.D. Ark. 1982). The workers' complete dependence on the foundation for "long periods, in some cases several years," the Court concluded, evidenced an expectation to receive in-kind benefits in exchange for their work. *Alamo*, 471 U.S. at 293, 301. The economic reality thus reflected an implicit compensation agreement that amounted to an employment relationship. *Id.* The Court held the workers were employees even though they uniformly viewed themselves as volunteers performing religious work. *Id.* at 300-01.[8] To hold otherwise would create a loophole vulnerable to employer coercion, which in turn would "exert a general downward pressure on wages in competing businesses." *Id.* at 302.

In conducting its analysis, *Alamo* relied on the seminal FLSA employment decision in *Portland Terminal*. There, the Court explained that a worker is not an employee if "without promise or expectation of compensation, but *solely* for his personal purpose or pleasure, [he] worked in activities carried on by other persons either for their pleasure or profit." 330 U.S. at 152 (emphasis added). Applying that rule, the Court held that individuals who participated in a seven- to eight-day training program to learn to be brakemen were not employees. *Id.* at 149, 153. Unlike in *Alamo*, the trainees in *Portland Terminal* did not take the place of paid employees, but sometimes "actually impede[d] and retard[ed]" operations, so therefore did not provide any

---

[8] The *Alamo* Court's assessment of the economic realities was not affected by the foundation's religious character or nonprofit status. *Id.* at 293, 300-01, 306. The FLSA applies to the commercial activities of religious or other nonprofit organizations, even if those activities are "infused with a religious purpose." *Id.* at 296-99; *see also Dobrosmylov v. DeSales Media Grp., Inc.*, No. 19-cv-5122 (BMC), 2021 WL 2779303, at *3 (E.D.N.Y. July 2, 2021) ("[T]he Supreme Court has rejected the notion that [a religious] mission exempts defendant from the FLSA."); *Boekemeier v. Fourth Universalist Soc'y in City of N.Y.*, 86 F. Supp. 2d 280, 286 (S.D.N.Y. 2000) (applying FLSA to a nonprofit church, if the threshold dollar amount would be met, where its activities were in "direct competition" with other entities offering similar rentals).

"immediate advantage" to the railroad. *Id.* at 149-50, 153. While some courts of appeals understand *Portland Terminal* to require only that a putative employer receives an "immediate advantage" to establish the worker was an employee, *see, e.g.*, *Axel v. Field Motorcars of Fla., Inc.*, 711 F. App'x 942, 945 (11th Cir. 2017), the Second Circuit has extrapolated to focus on which party receives the primary benefit from the worker's labor, *see, e.g.*, *Velarde v. GW GJ, Inc.*, 914 F.3d 779, 784-85 (2d Cir. 2019).

Courts confronted with cases like this one—involving residential rehabilitation program participants required to perform work—have followed *Alamo* and *Portland Terminal*'s instruction to focus on the two inquiries of compensation expectations and benefits received. *E.g.*, *Earl v. Bell House, LLC*, No. 8:20-CV-129, 2022 WL 394731, at *3 (D. Neb. Feb. 9, 2022); *Perez v. TLC Residential, Inc.*, No. C 15-02776 WHA, 2016 WL 6143190, at *3 (N.D. Cal. Oct. 21, 2016); *see also Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 533 (S.D.N.Y. 1998) (Sotomayor, J.) ("Two important elements in determining the 'economic reality' of an employment situation are whether there was an expectation or contemplation of compensation and whether the employer received an immediate advantage from any work done by the individuals."). Both inquiries, when applied to the well-pled allegations of the SAC, dictate a finding that Plaintiffs have plausibly alleged that they are Defendant's employees.

2.  Plaintiffs expected benefits and a small stipend as compensation for their work.

Contrary to Defendant's mischaracterization of the SAC as "threadbare" "formulaic recitation[s]" of elements, Mot. at 12, Plaintiffs repeatedly and with factual detail allege that they expected in-kind compensation from Defendant. "In exchange for the ARC workers' full-time labor," ARC workers receive dormitory housing, food, donated clothing, limited rehabilitation

programming, and a subminimum wage stipend, called a "gratuity." SAC ¶¶ 3, 31, 45-46.[9]
Plaintiffs expected these benefits—in particular, housing—upon enrolling at the ARCs. *Id.* ¶¶ 1,
3, 31, 55. Moreover, they expected such benefits not as a matter of charity, but in exchange for
their full-time labor. Numerous courts have held that where residential program participants
worked to receive non-cash benefits and small stipends, they have an expectation of compensation
and are therefore employees. *E.g.*, *Alamo*, 471 U.S. at 292, 301 (see discussion above); *Walker v.
Freedom Rain, Inc.*, No. 2:15-cv-00274-MHH, 2017 WL 897592, at *1-2, *5 & nn.5-6 (N.D. Ala.
Mar. 7, 2017) (rehabilitation program residents' receipt of a small stipend and a credit against
weekly program fees suffice to establish compensation expectations in exchange for "work
therapy"); *see also Earl*, 2022 WL 394731, at *4 (asking whether a recovery house's manager's
stipend and reduced rent were in exchange for his work); *Klick v. Cenikor Found.*, No. 4:19-CV-
01583, 2022 WL 1028065, at *6 (S.D. Tex. Apr. 6, 2022) (the provision of "housing, food, medical
care, and clothing" to participants in a drug rehabilitation program who engaged in "work therapy"
without pay was a form of compensation); *Perez*, 2016 WL 6143190, at *3 (managing residents
of sober living homes performing tasks "in exchange for free or discounted housing" formed a
compensation agreement).

Moreover, the allegations that ARC workers who were unable, even temporarily, to work
full time were removed from the program confirms the bargained-for exchange linking their labor
with access to the housing, food, and other compensation. SAC ¶¶ 5, 43. And just as in *Alamo*,
Plaintiffs were entirely dependent on TSA in meeting their basic needs, because they did not have

---

[9] TSA's conclusory insistence that Plaintiffs' allegations fail under *Twombly* is without basis. For instance, TSA maintains that Plaintiffs failed to allege "they were told that the provision of housing, food, clothing, or a small stipend was in any way compensation for the work they were to perform as work therapy." *Id.* at 13. But TSA quoted the SAC saying *just that* earlier in the paragraph. *Id.* at 12 (quoting SAC ¶ 3). Plaintiffs' allegations are factual, despite TSA's objections to the contrary.

permission or time to work outside of the ARC. *Id.* ¶¶ 4, 20-24, 31, 37, 46-48, 55-56; *see Alamo*, 471 U.S. at 293, 301. Accepting tips, earning additional income, or complaining about the lack of payment were all grounds for discipline or dismissal. SAC ¶¶ 46, 49. This dependence strongly suggests that Plaintiffs expected in-kind compensation, as they would otherwise have no means of providing for themselves. Moreover, like the participants in *Alamo*, ARC workers enroll in the ARC programs for long periods of time—six months to graduate, though some participants enroll in the program multiple times, *id.* ¶ 58—which is a far cry from the seven- or eight-day training program in *Portland Terminal.* 330 U.S. at 149.

Defendant's reliance on a purported admittance statement in which ARC workers state they are not employees, a fact TSA improperly attempts to port over from *Williams*, Mot. at 4, 10, 11, 13, is irrelevant. First, the label parties place on a working arrangement, in a contract or otherwise, cannot override evidence of a compensation arrangement. *See, e.g.*, *Alamo*, 471 U.S. at 300-02; *see also Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) ("FLSA rights cannot be abridged by contract or otherwise waived."); *Marshall v. UBS Fin. Servs., Inc.*, No. 14 Cv. 4384(JGK), 2015 WL 4095232, at *3 (S.D.N.Y. July 7, 2015) (citing *Alamo*, 471 U.S. at 302, for the proposition that "[w]orkers cannot choose whether to be covered under the FLSA, and thus, a worker's expectations [regarding whether he is an employee] cannot determine eligibility for wage protection."); *Trejos v. Edita's Bar & Rest., Inc.*, No. CV-08-1477 (ARR), 2009 WL 749891, at *2 (E.D.N.Y. Mar. 17, 2009) ("[T]he subjective intent of the parties in forming the employment relationship has little to no significance in determining whether a plaintiff is an independent contractor or employee."). Such a formalistic approach risks coercion and the possibility of undermining FLSA's statutory purpose. *See Alamo*, 471 U.S. at 302 ("If an exception to the [FLSA] were carved out for employees willing to testify that they performed work 'voluntarily,'

employers might be able to use superior bargaining power to coerce employees to make such assertions, or to waive their protections under the Act."). And in any event, because the SAC does not contain allegations regarding the language of any admittance statements, Defendant's representations as to the content of such statements may not be considered at the pleadings stage. *See* Section III at 5-7 *supra*.

### 3.   Plaintiffs' work primarily benefited TSA by earning significant, immediate revenue, outweighing the ARC's limited rehabilitation services.

Where, as here, a putative employer receives both primary and "immediate advantage" from the work, an employment relationship exists. *Portland Terminal*, 330 U.S. at 153. In *Vaughn*, a factually distinguishable case involving a person who claimed he was an employee of a residential rehabilitation program for which he was required to work, the Second Circuit held that the seven-factor test for differentiating between interns and employees set forth in *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528 (2d Cir. 2016), should be used to determine whether the plaintiff was the "primary beneficiary" of the working relationship. *Vaughn v. Phoenix House New York Inc.*, 722 F. App'x 4 (2d Cir. 2018) ("*Vaughn I*"). Thereafter, the Second Circuit affirmed the district court's finding on remand that, under *Glatt*, Vaughn had not alleged he was Phoenix House's employee.[10] *Vaughn II*, 957 F.3d 141; *Vaughn v. Phoenix House Found., Inc.*, No. 14-CV-3918 (RA), 2019 WL 568012 (S.D.N.Y. Feb. 12, 2019).

Plaintiffs' allegations in the instant cases differ materially from the allegations in *Vaughn*

---

[10] On remand, the district court applied the *Glatt* factors, but noted that "some of the specific factors enumerated in *Glatt* have limited application" in a case involving whether a patient in a drug treatment program is the program's employee. *Vaughn*, 2019 WL 568012, at *4; *id.* (noting that factors two through four—"the existence of integrated coursework, the receipt of academic credit, and the extent to which the internship accommodates the academic calendar—have no direct application here"). The district court therefore applied the *Glatt* factors, but, as this Court did in *Doyle*, "focuse[d] on a 'higher level of generality' in order to faithfully assess the 'economic reality' of Vaughn's relationship with Phoenix House." *Id.* at *5 (quoting *Danneskjold v. Hausrath*, 82 F.3d 37, 42-43 (2d Cir. 1996); *see infra*, pp. 16-18 (discussing *Doyle*).

in three respects that establish that TSA, not Plaintiffs, was the primary beneficiary of the working relationship. First, in *Vaughn*, the Second Circuit affirmed the district court's holding that Factor One (expectation of compensation) "weigh[ed] heavily in favor of" Phoenix House because Vaughn conceded that he had no expectation of compensation. *Vaughn*, 2019 WL 568012, at *5-6; *Vaughn II*, 957 F.3d at 146. In contrast, Factor One strongly favors Plaintiffs here because they allege they had an implied agreement for in-kind compensation (housing, food, clothing, and weekly payments) in exchange for their work. SAC ¶¶ 3, 31.

Second, the Second Circuit affirmed the district court's holding that Vaughn was not an employee because he "received significant benefits . . . not captured by the *Glatt* factors," *Vaughn*, 2019 WL 568012, at *8— namely, "he was permitted to receive rehabilitation treatment there in lieu of a jail sentence." *Vaughn II*, 957 F.3d at 146. Plaintiffs in the instant case received no such benefit. The putative collective and classes only consist of ARC participants who did not enroll to avoid incarceration. SAC ¶¶ 66, 75 (defining FLSA collective and Rule 23 classes to encompass participants who "did not or will not enroll in the ARC Program to comply with a court order or condition of probation or parole"). This crucial distinction distinguishes the instant case from *Vaughn II* and from *Fochtman v. Hendren Plastics, Inc.*, No. 20-2061, 2022 WL 3652684 (8th Cir. Aug. 25, 2022), and this Court's decision in *Doyle v. City of New York*, 91 F. Supp. 3d 480 (S.D.N.Y. 2015), two other cases upon which TSA relies in which people participated in work programs to avoid incarceration and/or criminal convictions.

Third, Factor Six of the *Glatt* test (displacement of paid employees) strongly favors Plaintiffs here, whereas it served as a weak factor in *Vaughn II*. Vaughn only performed tasks to further Phoenix House's operation of its rehabilitation program, such as "relay[ing] information to patients," working in the garbage room, and "packing food orders for delivery to Phoenix House's

treatment locations." *Vaughn*, 2019 WL 56801, at *1. The district court did hold that Factor Six favored Vaughn because Vaughn's work "enabled Phoenix House to reduce its costs in comparison to other treatment facilities in the marketplace." *Id.* at *8 (quotation marks omitted). But the district court substantially discounted the factor (and the Second Circuit affirmed that holding) because Vaughn "did not work 'to produce goods or services that are sold in commerce,' . . . but rather to 'serve various institutional missions of the [facility], such as . . . care and maintenance.'" *Id.* (quoting *Danneskjold*, 82 F.3d at 43); *Vaughn II*, 957 F.3d at 146 (holding that district court properly discounted Factor Six). In contrast, ARC workers' labor displaces paid workers and produces goods and services that are sold in commerce, earning millions for TSA. SAC ¶¶ 2, 6, 38-41, 63. Thus, while Factor Six may have only weighed slightly in Vaughn's favor, it weighs substantially in Plaintiffs' favor because of the tremendous advantage obtained by TSA against its thrift store competitors.[11] *E.g.*, *Earl*, 2022 WL 394731, at *4 (finding "highly relevant" whether the defendants "would have to hire someone to perform the tasks" completed by the plaintiff); *Walker*, 2017 WL 897592, at *5 (noting that defendant's businesses, including thrift stores which otherwise would have had to hire workers at minimum wage, received a direct economic benefit); *Copeland v. C.A.A.I.R., Inc.*, No. 17-CV-564-TCK-JFJ, 2019 WL 4307125, at *4 (N.D. Okla. Sept. 11, 2019) (noting that FLSA intended to preclude the unfair competitive advantage derived from below-market labor costs); *see also Alamo*, 471 U.S. at 299.

In sum, these three, important differences between the allegations in *Vaughn* and in the instant case, demonstrate that, under the *Glatt* test, TSA is the primary beneficiary of the working

---

[11] TSA claims, citing to its website, that its thrift stores "are not for-profit commercial ventures, but rather only exist to fund the operation of the ARCs." Mot. at 16. The Court cannot consider such purportedly factual statements at this stage of the case. Moreover, the webpage to which TSA cites does even support TSA's broad assertion that all of the revenue from the thrift stores goes toward the operation of the ARCs. And TSA points to no authority which stands for the proposition that, even if all profits were used for the ARCs, TSA would not have to comply with the FLSA.

relationship.[12] As a result, Plaintiffs' complaint adequately alleges that Plaintiffs were TSA's employees.

Plaintiffs have also sufficiently pled that they were TSA's employees if the Court were to take a more holistic approach to the economic reality test, as it previously did in *Doyle*, 91 F. Supp. 3d 480. In that case, the Court held that people performing a few hours of unpaid community service on the weekends to avoid a criminal conviction and potential incarceration were not employees under the FLSA. *Id.* In applying the primary beneficiary test, the Court cautioned against "miss[ing] the forest for the trees" and stressed that, for atypical working relationships, "the economic reality test must be applied at 'a higher level of generality,' with attention to whether the case involves the kind of employment relationship Congress had in mind when it enacted the FLSA." *Id.* at 486 (quoting *Danneskjold*, 82 F.3d at 42-43).

That type of analysis leads to the conclusion that Plaintiffs have pled they are TSA's employees. Plaintiffs allege that the monetary benefit to TSA outweighs the limited rehabilitative benefits, if any, that ARC participants receive. Unlike in the cases cited by TSA, *see* Mot. at 14-18, the millions of dollars in revenue generated by ARC workers' labor are a substantial, not an incidental or secondary, benefit to TSA. Plaintiffs also plead that they do not receive any skills training or job placement, that the "work therapy" detracts from time that could be spent on rehabilitation, and that the rehabilitation services actually offered by TSA are meager. SAC ¶¶ 37, 50-51, 57. TSA's unsupported claim that Plaintiffs enroll at ARCs purely for rehabilitation, Mot. at 4, 12, that work therapy is one element of ARC workers' relationship with it, but "not the defining one," *id.* at 7, and that the "work therapy is *itself* a rehabilitative service," *id.* at 17, cannot

_____

[12] As the Second Circuit held in *Vaughn II*, Factors Two through Four are largely inapplicable here. *See Vaughn II*, 957 F.3d at 146. And though Factors Five (limited duration of program) and Seven (no entitlement to a job at the end of the program) may slightly favor TSA, those factors do not outweigh Factors One and Six, which strongly favor Plaintiffs.

trump clear allegations to the contrary at the pleadings stage. *See* Section III at 5-7; *see also Alamo*, 471 U.S. at 301 (finding plaintiffs to be employees although, as noted in the courts below, 722 F.2d at 399, their work was similarly considered part of their rehabilitation).[13] These factual claims fly in the face of the SAC, in which Plaintiffs allege that forty hours of work per week is the "cornerstone" of the ARCs, as demonstrated by the fact ARC workers are required to make up any missed work hours; will be kicked out of the program or excluded from enrolling if they are unable to work, even if due to illness or injury; may be subject to discipline if they complain about wages; and are subject to harsh and unsanitary working conditions. SAC ¶¶ 2, 5, 31-32, 34-35 43-44, 49. At this stage of the case, TSA's disagreements with Plaintiffs' well-pled factual allegations do not provide a basis for dismissing the complaint.

Plaintiffs are therefore not similarly situated to the plaintiffs in *Doyle*. Unlike the plaintiffs here, the *Doyle* plaintiffs (1) worked to avoid a criminal conviction and potential jail or prison time, (2) were not dependent on the City of New York because their part-time community service did not preclude other employment, and (3) did not produce goods or services that were sold in commerce and therefore did not provide the City with an unfair business advantage. *Doyle*, 91 F. Supp. 3d at 489, 491 (acknowledging that Court may have reached a different result if "Plaintiffs had been required to work for private, for-profit enterprises"). Instead, Plaintiffs are like the plaintiffs in other, similar cases where courts have held workers to be employees. *See Elwell v. Weiss*, No. 03-CV-6121, 2007 WL 2994308, at *5 (W.D.N.Y. Sept. 29, 2006) ("[F]rankly, it is difficult to convince this Court . . . that the purpose of a program which requires a beneficiary like

---

[13] TSA wrongly asserts that the *Alamo* plaintiffs' work occurred only after they had completed their rehabilitation. Mot. at 11-12. Rather, as TSA claims regarding the "work therapy" here, the work was considered by the defendant in *Alamo* to be part of the workers' purported rehabilitation. *Donovan*, 722 F.2d at 399 ("As part of their rehabilitation they perform useful work in the thirty some commercial businesses operated by the foundation.").

[plaintiff] to . . . clean kitchens, paint walls, move furniture and unload trucks as a condition of receiving public assistance benefits is predominately rehabilitative or specifically designed to help him achieve economic independence."); *Walker*, 2017 WL 897592, at *5 (holding that an employment relationship can exist where both parties' interests are served, including some rehabilitation for plaintiff).

        4.      <u>The cases cited by Defendants are readily distinguishable.</u>

Defendant invokes a host of other cases in an unsuccessful effort to circumvent *Alamo* and *Portland Terminal*. None of these precedents, however, control the outcome here.

Defendant relies most heavily on *Williams*, 87 F.3d 1064, in which the Ninth Circuit held that a participant at a Salvation Army ARC in San Francisco (owned and operated by an entity separate from Defendant, *see* Section III at 6 n.3 *supra*) was not the ARC's employee. *Williams* turned on two undisputed facts established in that summary judgment record, neither of which are alleged in—and indeed, both of which are contradicted by—Plaintiffs' complaint. First, there was no dispute that the *Williams* plaintiff had no explicit or implied agreement for compensation, a prerequisite for employment under *Alamo* and *Portland Terminal*. *Williams*, 87 F.3d at 1066, 1067. In contrast, Plaintiffs allege that their compensation agreement with Defendant was clear: full-time work in exchange for housing, food, clothing, rehabilitation services, and a small weekly payment. SAC ¶¶ 3, 31; *see Williams*, 87 F.3d at 1068 ("[I]n-kind benefits can be 'wages in another form.'" (quoting *Alamo*, 471 U.S. at 301)).

Second, the parties did not dispute that the *Williams* plaintiff's work for the San Francisco ARC was "solely rehabilitative," suggesting that he was not an employee because that ARC did not derive any benefit from his labor. *Williams* 87 F.3d at 1067 (citing *Portland Terminal*, 330 U.S. at 152). Plaintiffs here contend that their menial, grueling work for Defendant neither

furthered their rehabilitation nor provided them with meaningful training, all while earning millions of dollars for and providing a competitive advantage to TSA. *Id.* ¶ 5, 37, 38-41, 50; *see Williams*, 87 F.3d at 1067 (distinguishing *Alamo* "where the associates work contemplated both rehabilitation and compensation").[14] As many cases have held, the fact that the worker derives some benefit from the working relationship does not mean they are not employees. *E.g.*, *Alamo*, 471 U.S. at 301; *Walker*, 2017 WL 897592, at *5; *Perez*, 2016 WL 6143190, at *3-4; *Archie*, 997 F. Supp. at 534-35. As one court explained, "[j]ust because a "*solely* rehabilitative" . . . relationship in *Williams* fell outside the scope of the FLSA does not mean that every alleged employer-employee relationship with any 'rehabilitative' element is similarly exempt." *Perez*, 2016 WL 6143190, at *4. Indeed, "[s]uch an interpretation of the FLSA would directly contradict *Alamo*, which—as the *Williams* decision recognized—demonstrated that an employer-employee relationship can be found under the economic reality test even when the employees themselves claim their work is wholly for purposes other than compensation." *Id.*

That Plaintiffs turned over their food stamps to the ARCs, a fact the court considered relevant in *Williams*, is of no moment, as Plaintiffs allege those funds offset only a small portion of Defendant's costs of operating the ARCs. *See* SAC ¶¶ 3, 56. Nor does it matter that Plaintiffs have alleged that the ARC program was intended to last for six months like the program in *Williams*. *Id.* ¶ 57; *Williams*, 87 F.3d at 1068. *Williams* found that the six-month program at issue, including the work requirement, matched the extent of the plaintiff's rehabilitative needs, 87 F.3d at 1068, whereas Plaintiffs have alleged here that the work they performed "d[id] not primarily further [their] rehabilitation," SAC ¶ 37. Plaintiffs have also alleged that some participants reenroll

---

[14] As discussed in Section III at 5-7 *supra*, at this stage of the case, the court cannot credit Defendant's unsupported assertions to the contrary.

in the program, meaning their participation extends beyond six months. *Id.* ¶ 58. Lastly, *Williams* brushes aside, without any real analysis, *Alamo*'s command to examine the extent to which the workers are dependent on the entity for which they work. *See Williams*, 87 F.3d at 1068 (citing *Alamo*, 471 U.S. at 301). As explained, Plaintiffs have alleged that they were dependent on Defendant for food, clothing, and shelter because they were precluded from other employment by their participation in the ARC. *See* SAC ¶¶ 1, 45-48, 55. Thus, Plaintiffs' complaint, even when analyzed through *Williams*'s version of the economic reality test, sufficiently alleges that Plaintiffs were Defendant's employees.

The other cases cited by Defendant, in which courts have held in distinguishable circumstances that workers were not employees under the FLSA, *see* Mot. at 7-8 nn.2-9, are inapposite and provide no basis for this Court to look beyond *Alamo* and *Portland Terminal*. Plaintiffs were not interns or student trainees.[15] Plaintiffs were not unhoused, performing a few hours of chores to keep their homeless shelter running.[16] Plaintiffs did not enroll in the ARCs as an alternative to incarceration or military service.[17] Plaintiffs were not criminal or civil detainees

---

[15] Plaintiffs' work was unrelated to any course of academic or vocational study, did not provide them with meaningful training, displaced paid employees who would otherwise be necessary to run Defendant's thrift stores, and provided substantial, as opposed to incidental, benefits to Defendant. *Compare* SAC ¶¶ 37-41, *with Hollins v. Regency Corp.*, 867 F.3d 830 (7th Cir. 2017) (cosmetology students working in salon operated by school to get license); *Velarde*, 914 F.3d at 786 (same); *Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199, 1203 (11th Cir. 2015) (nurse anesthetist students performing clinical training necessary for degree); *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 529-30 (6th Cir. 2011) (boarding school students who performed four hours of daily vocational work that was integrated with four hours per day of academic studies were not employees because they "d[id] not displace compensated workers" and did "more harm to the purported employer's operations than good"); *Jones v. IndustryPro.com, Inc.*, No. 1:20-CV-1412-SCJ, 2021 WL 2593768 (N.D. Ga. Mar. 2, 2021) (three-month college internship at financial advisor firm).

[16] *Compare* SAC ¶¶ 2, 31 46, 54 (TSA requires ARC workers to work forty hours per week and precludes ARC workers from outside employment), *with Armento v. Asheville Buncombe Cmty. Christian Ministry, Inc.*, 856 F. App'x 445, 448 (4th Cir. 2021) (shelter residents with outside jobs or with disabilities exempted from chore requirement).

[17] Plaintiffs therefore did not receive the types of benefits that may indicate a worker was the primary beneficiary of the working relationship. *Compare* SAC ¶¶ 66, 75, *with Doyle*, 91 F. Supp. 3d at 490 (discussed above); *Vaughn II*, 957 F.3d 141 (discussed above); *Isaacson v. Penn. Cmty. Servs., Inc.*, 450 F.2d 1306 (4th Cir. 1971) (worker laboring in lieu of military service not employee because work was performed out of a statutory obligation to serve the public good rather than a desire for compensation and did not displace other workers). For these reasons, the Eighth

taken out of the labor market while incarcerated.[18] Plaintiffs were not volunteers.[19] And Plaintiffs most certainly were not performing work while in a romantic relationship with Defendant.[20]

Instead, Plaintiffs were just like the plaintiffs in *Alamo*: long-term participants dependent upon residential rehabilitation programs where, in exchange for their full-time work facilitating the sale of goods in commerce to generate revenue for the program, they received in-kind compensation of housing, food, clothing, and rehabilitation services and small payments. Just as in *Alamo*, this Court should hold that Plaintiffs are, on the well-pled allegations in the complaint, Defendant's employees under the FLSA, and thus Plaintiffs have properly stated a claim.

     5.     <u>The *Brock* factors confirm Plaintiffs' employment status.</u>

Although *Alamo* squarely governs this case, the factors set forth in *Brock v. Superior Care,*

---

Circuit's recent decision in *Fochtman*, 2022 WL 3652684, does not control. There, the court found no implied compensation arrangement where the program provided in-kind benefits (room and board) to program participants, who were court-ordered into the drug recovery program in lieu of incarceration. *Id.* at *5 ("[T]he overriding consideration is that the DARP participants undertook the recovery program for their own purposes to avoid imprisonment . . . ."). Moreover, the third-party entity for whom participants worked paid DARP amounts greater than minimum wage in exchange for the plaintiffs' labor, thus eliminating the risk of unfair competition. *Id.*

[18] Rather, Plaintiffs were free to sell their labor to any employer and bargained with TSA for the exchange of room and board for work. *Compare* SAC ¶¶ 20-24, *with Danneskjold*, 82 F.3d at 42 (prisoners not employees because they "are taken out of the national economy; prison work is often designed to train and rehabilitate; prisoners' living standards are determined by what the prison provides; and most such labor does not compete with private employers"); *Vanskike v. Peters*, 974 F.2d 806. 809 (7th Cir. 1992) (prisoners not employees due to lack of "bargained-for exchange of labor for consideration"); *Harker v. State Use Indus.*, 990 F.2d 131 (4th Cir. 1993) (same); *Ndambi v. CoreCivic, Inc.*, 990 F.3d 369, 372 (4th Cir. 2021) (holding plaintiffs were in custodial detention and thus not free to walk off the job, look for other work, and form a genuine employer-employee relationship); *Guevara v. I.N.S.*, 902 F.2d 394, 396 (5th Cir. 1990) (holding immigration detainees "removed from American industry" were not employees under the FLSA); *Kavazanjian v. Naples*, No. 06-CV-3390 (JG), 2006 WL 2795220 (E.D.N.Y. Sept. 26, 2006) (holding that prisoners who worked for a Department of Motor Vehicles call center were not employees because their services were not sold in commerce, their putative employer did not compete with companies required to pay FLSA minimum wage, and their labor contributed to the institutional needs of the prison by providing an opportunity for job skills and training).

[19] As in *Alamo*, Plaintiffs expected and received in-kind compensation for their labor and were dependent on Defendant. *Compare* SAC ¶¶ 3-4, 46, *with Acosta v. Cathedral Buffet, Inc.*, 887 F.3d 761 (6th Cir. 2018) (volunteers at church-owned restaurant not employees because they did not receive or expect to receive in-kind compensation and were not "economically dependent" on the restaurant "in any way"); *Freeman v. Key Largo Volunteer Fire & Rescue Dep't*, 494 F. App'x 940 (11th Cir. 2012) (volunteer firefighter not an employee)); *see also Mendel v. City of Gibraltar*, 727 F.3d 565, 571 (6th Cir. 2013) (holding that volunteer firefighters paid an hourly fee for their work were employees under FLSA).

[20] *Compare* SAC ¶¶ 20-24, *with Steelman v. Hirsch*, 473 F.3d 124, 129 (4th Cir. 2007).

*Inc.*, 840 F.2d 1054, 1058-59 (2d Cir. 1988), the Second Circuit's seminal decision for distinguishing between independent contractors and employees, also support Plaintiffs. In addition to the five factors, the "ultimate concern" "is the economic dependence of the putative employee on the putative employer." *Godoy v. Rest. Opportunity Ctr. of N.Y., Inc.*, 615 F. Supp. 2d 186, 193 (S.D.N.Y. 2009) (quoting *Brock*, 840 F.2d at 1059). Courts in other districts have looked to similar factors when evaluating the employee status of participants in rehabilitation programs. First, TSA controls every aspect of ARC participants' work. SAC ¶ 42; *see, e.g.*, *Earl*, 2022 WL 394731, at *4 (accounting for defendants' dictation of plaintiff's work schedule); *Copeland*, 2019 WL 4307125, at *4 (finding relevant that defendants controlled plaintiffs' work schedules, conditions of employment, and rate of pay); *see also Elwell*, 2007 WL 2994308, at *4. Second, ARC workers, in contrast to TSA's thrift stores, have no opportunity to earn a profit. *Id.* ¶¶ 3, 38-39, 45. Third, the work performed by ARC workers consists primarily of menial tasks, requiring no specialized abilities, allowing for no independent initiative, and conferring no skill development. *Id.* ¶¶ 33-35, 37, 40. Fourth, ARC participants work at least forty hours per week for the duration of their time in the ARC, which can last up to six months or, due to extended or repeated enrollments, more. *Id.* ¶¶ 4, 57-58; *see, e.g.*, *Earl*, 2022 WL 394731, at *4 (considering the length of time plaintiff worked each day). Fifth, ARC workers' labor is integral to TSA's operation of its network of thrift stores; without their work, TSA would have to hire additional paid staff to perform the same tasks. SAC ¶¶ 2, 6, 33, 38, 40-41. Finally, workers are economically dependent on TSA. *Id.* ¶¶ 3-4, 46-48, 55. Because TSA refuses to adequately pay ARC participants for their work (including by prohibiting tips) or permit them to earn income outside of the program, they "often leave the ARC penniless and jobless, unable to survive economically in their communities." SAC ¶¶ 4, 46; *see Copeland*, 2019 WL 4307125, at *4 (acknowledging that the congressional purpose of FLSA would be served

by "allowing Plaintiffs to retain and save their wages" to better support themselves upon leaving the program).

> B.    Plaintiffs have adequately pled their state law claims.

TSA's attempt to dismiss Plaintiffs' well-pleaded state law claims also fails. First, as TSA points out, the test for an employment relationship under the New York, Pennsylvania, and Maine labor laws are the same as under the FLSA. *See, e.g.*, *Cazares v. 2898 Bagel & Bakery Corp.*, No. 18-CV-5953 (AJN), 2020 WL 2832766, at *5 (S.D.N.Y. May 31, 2020) (noting definitions of "employer" and "employee" are "nearly identical" under the New York Labor Law ("NYLL") and the FLSA, and the NYLL's minimum wage provision "mirror[s]" the FLSA); *Bansept v. G & M Auto.*, 434 F. Supp. 3d 253, 258 (E.D. Pa. 2020) ("Because of the similarities between the [Pennsylvania Minimum Wage Act ('PMWA')] and the FLSA, Pennsylvania courts analyze overtime and minimum wage violations of the PMWA and the FLSA under the same framework."); *Bradford v. Naples Causeway Dev., LLC*, No. 2:21-CV-00015-NT, 2022 WL 1538671, at *4 n.6 (D. Me. May 16, 2022) ("Maine's minimum wage and overtime laws generally agree with their FLSA counterparts, and courts often look to the FLSA when analyzing Maine wage disputes."); *Scovil v. FedEx Ground Package Sys., Inc.*, 886 F. Supp. 2d 45, 51 (D. Me. 2012) (applying same definition of "employee" to sections 626, 629, and 664 of Maine's Labor and Industry Code). Because Plaintiffs' federal claims survive, so too do their state law claims.

Second, TSA argues that Plaintiffs' claims under the NYLL fail because Plaintiffs fall within a statutory exception to the definition of "employee." Specifically, Section 651 of the NYLL excludes from the definition of "employee" "any individual who is employed or permitted to work . . . in or for such a . . . charitable institution, which work is incidental to . . . charitable aid conferred upon such individual and not under any express contract of hire[.]" N.Y. Lab. Law § 651(5)(h) (2022). The question of whether this exception applies, however, is not appropriate

for resolution at the motion to dismiss stage. A statutory exception typically must be asserted as an affirmative defense, on which the employer bears the burden of proof and which may be raised by a pre-answer motion to dismiss only if the defense appears on the face of the complaint. *See DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 n.7 (2d Cir. 2013) (plaintiff was not "required to plead facts at this [dismissal] stage of the proceedings to support her position that she . . . falls outside of the [overtime] exemptions"); *Gjoni v. Orsid Realty Corp.*, No. 14 CIV. 8982 GBD, 2015 WL 4557037, at *7 (S.D.N.Y. July 22, 2015) (dismissal of NYLL claim was inappropriate on motion to dismiss where exemption was "not obvious" based on allegations in complaint); *Dejesus v. HF Mgmt. Servs, LLC*, No. 12 Civ. 1298 (ERK) (RML), 2012 WL 5289571, at *2 (E.D.N.Y. Oct. 23, 2012) ("[T]he claim of exemption is likely to be heavily fact-intensive and inappropriate for resolution at the motion to dismiss stage."). Moreover, in light of the remedial purpose of the NYLL, statutory exemptions are narrowly construed against the employer. *See Pray v. Long Island Bone & Joint*, LLP, No. 14 Civ. 5386 (SJF) (SIL), 2016 WL 9455557, at *9 (E.D.N.Y. Aug. 11, 2016).

TSA does not and cannot point to any facts in the SAC that support its contention that the Section 651(5)(h) exception applies because the work performed by ARC workers is incidental to charitable aid conferred upon them. To the contrary, Plaintiffs allege, among other things, that the cornerstone of the ARCs is that all ARC workers must perform at least forty hours per week of difficult work for TSA; TSA requires ARC workers to work so many hours that it leaves little time for them to focus on rehabilitation; the jobs performed by ARC workers directly, substantially, and primarily benefit the operation of TSA's thrift stores; an ARC worker's refusal or inability to work is grounds for TSA to expel the worker from the ARC; and ARC workers receive housing, food, clothing, limited rehabilitation services, and nominal wages in exchange for their work. SAC

¶¶ 2, 3, 37, 38, 43. Application of the exception is not apparent from, and in fact is contradicted by, the allegations in the SAC. Plaintiffs have sufficiently pled their NYLL claims.

## V.    CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss.

October 13, 2022

Respectfully submitted,

COHEN MILSTEIN SELLERS & TOLL PLLC

By: */s/ Christine E. Webber*
Christine E. Webber (admitted Pro Hac Vice)
Joseph M. Sellers (admitted Pro Hac Vice)
Kalpana Kotagal (Atty. Reg. No. 4462792)
Rebecca A. Ojserkis* (Atty. Reg. No. 5578216)
1100 New York Ave., N.W., Suite 500
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
cwebber@cohenmilstein.com
jsellers@cohenmilstein.com
kkotagal@cohenmilstein.com
rojserkis@cohenmilstein.com

*\* Admitted only in New York and Maryland;
Supervision by Christine Webber, Joseph Sellers,
and Kalpana Kotagal, members of the D.C. Bar*

Michael Hancock (admitted Pro Hac Vice)
Cohen Milstein Sellers & Toll PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Tel.: (212) 838-7797
Fax: (212) 838-7745
mhancock@cohenmilstein.com

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Michael Freedman*
Gay Grunfeld (admitted Pro Hac Vice)
Michael Freedman (admitted Pro Hac Vice)
Priyah Kaul (admitted Pro Hac Vice)
101 Mission Street, 6th Floor
San Francisco, CA 94105
Tel.: (415) 433-6830
Fax: (415) 433-7104
ggrunfeld@rbgg.com
mfreedman@rbgg.com
pkaul@rbgg.com

RUKIN HYLAND & RIGGIN LLP

By: */s/ Valerie Brender*
Jessica Riggin (admitted Pro Hac Vice)
Valerie Brender (Atty. Reg. No. 5203005)
1939 Harrison St., Suite 290
Oakland, CA 94612
Tel.: (415) 421-1800
Fax: (415) 421-1700
jriggin@rukinhyland.com
vbrender@rukinhyland.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2022, a copy of Plaintiffs' Opposition to Defendant's

Motion to Dismiss was served on all counsel of record electronically through CM/ECF.

Dated:    October 13, 2022                    */s/ Michael Freedman*
_____
                                              Michael Freedman