**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td>
ROBERT GEISER, SHAUN HALLORAN, AVERY ACKER, CHRISTINA AQUILINO, AND JOSHUA FRASER, on behalf of themselves and all others similarly situated,<br><br>

          Plaintiffs,<br><br>

v.<br><br>

THE SALVATION ARMY, a New York nonprofit corporation,<br><br>

          Defendant.
</td><td>
Civil Action No. 1:22-cv-01968-JMF<br><br>

<u>**ORAL ARGUMENT REQUESTED**</u>
</td></tr>
</table>

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

    I.     Plaintiffs Fail to Plausibly Allege That They Had an Expectation of Compensation. ............................................................................................. 2

         A.     Plaintiffs fail to allege an expectation of compensation with sufficient factual detail. ....................................................................... 2

         B.     As in *Strickland*, Plaintiffs received no implied or express compensation as a component of their pursuit of their own rehabilitation. ...................... 4

    II.    Plaintiffs Are the Primary Beneficiaries of the ARC Programs ............................ 7

    III.   The *Brock* Factors Are Not Applicable. ............................................................. 10

CONCLUSION ........................................................................................................................ 10

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acosta v. Cathedral Buffet, Inc.*,
  887 F.3d 761 (6th Cir. 2018) .................................................................................................9

*Archie v. Grand Cent. P'ship, Inc.*,
  997 F. Supp. 504 (S.D.N.Y. 1998).......................................................................................10

*Barrentine v. Arkansas-Best Freight System, Inc.*,
  450 U.S. 728 (1981) ...............................................................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................................2, 3

*Brock v. Superior Care*,
  840 F.2d 1054 (2d Cir. 1988)...............................................................................................10

*Doyle v. City of N.Y.*,
  91 F. Supp. 3d 480 (S.D.N.Y. 2015).....................................................................................9

*E.E.O.C. v. Port Auth. of N.Y. & N.J.*,
  768 F.3d 247 (2d Cir. 2014)...................................................................................................3

*Fochtman v. Hendren Plastics, Inc.*,
  47 F.4th 638 (8th Cir. 2022) ............................................................................................7, 10

*Glatt v. Fox Searchlight Pictures, Inc.*,
  811 F.3d 528 (2d Cir. 2016)..............................................................................................6, 10

*Marshall v. UBS Fin. Servs., Inc.*,
  No. 14-cv-4384, 2015 WL 4095232 (S.D.N.Y. July 7, 2015)...............................................6

*Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Centers Ret. Plan v.
  Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013)................................................................................................2, 3

*Perez v. TLC Residential, Inc.*,
  No. C 15-02776, 2016 WL 6143190 (N.D. Cal. Oct. 21, 2016)............................................7

*Ramirez v. The Salvation Army*,
  No. C06-0631, 2008 WL 670153 (N.D. Cal. Mar. 6, 2008)..................................................9

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000).....................................................................................................6

*Salvation Army v. Town of Ellicott Bd. of Assessment Rev.*,
  100 A.D.2d 361 (N.Y. App. Div. 1984) ............................................................8, 9

*Tony and Susan Alamo Foundation v. Secretary of Labor*,
  471 U.S. 290 (1985)...........................................................................4, 6, 7, 10

*Trejos v. Edita's Bar & Rest., Inc.*,
  No. CV-08-1477, 2009 WL 749891 (E.D.N.Y. Mar. 17, 2009)...............................6

*Vaughn v. Phoenix House Found., Inc.*,
  No. 14-CV-3918, 2019 WL 568012 (S.D.N.Y. Feb. 12, 2019), *aff'd sub nom.*
  *Vaughn v. Phoenix House of New York*, 957 F.3d 141 (2d Cir. 2020) ................................7, 8

*Vaughn v. Phoenix House of New York*,
  957 F.3d 141 (2d Cir. 2020)........................................................................ *passim*

*Walling v. Portland Terminal Co.*,
  330 U.S. 148 (1947)........................................................................................10

*Williams v. Strickland*,
  87 F.3d 1064 (9th Cir. 1996) ........................................................................ *passim*

## INTRODUCTION

The Ninth Circuit resolved this exact issue more than 20 years ago in *Williams v. Strickland*, 87 F.3d 1064 (9th Cir. 1996), which involves the same rehabilitation program, provided by another Salvation Army entity, alleging the exact same claims as made here.  Here, as in *Strickland*, The Salvation Army, a New York nonprofit corporation (the "New York Corporation"), provided Plaintiffs with housing, food, clothing, a small stipend, and rehabilitative services, not as compensation for their work therapy, but as part and parcel of the rehabilitation program.  As the Ninth Circuit explained, such a program cannot be fairly described as creating an employment relationship.  *Id*. at 1067.  While Plaintiffs attempt to minimize and distinguish *Strickland*, their attempt is unavailing, as Plaintiffs' Second Amended Complaint ("SAC") (ECF No. 83) fails to provide the factual context necessary to make their claims plausible.

Nor does Plaintiffs' Opposition to Defendant's Motion to Dismiss ("Br.") (ECF No. 92) bolster their claims.  Rather, Plaintiffs merely reiterate their conclusory claims that they worked "in exchange for" in-kind benefits and proceed as though the receipt of in-kind benefits in this context would necessarily constitute an expectation of compensation.  It appears that Plaintiffs contend the mere provision of in-kind benefits as part of a rehabilitation program that includes a work therapy component is sufficient to create an implied compensation agreement.  However, as described more fully below, Second Circuit precedent in *Vaughn v. Phoenix House of New York,* 957 F.3d 141 (2d Cir. 2020) ("*Vaughn II*") rejects this notion on its face.  Plaintiffs do not plausibly or specifically allege they had any expectation of compensation — and this alone is fatal to their claim.  And Plaintiffs provide no factual details that would allow this Court to reasonably infer such expectation.

1

Plaintiffs concede that the Court should look to the "'totality of the circumstances'" in assessing the relationship (Br. at 7), yet repeatedly fail to acknowledge the rehabilitative nature of the Adult Rehabilitation Center ("ARC") program.  While Plaintiffs attempt to distract the Court by pointing to the revenue allegedly generated by the thrift stores, the mere receipt of revenue does not render the New York Corporation the primary beneficiary of its relationship with Plaintiffs. Instead, looking to the economic reality of the rehabilitation program, as well as case law from the three circuit courts that have considered employment status in the context of work therapy, it is clear that Plaintiffs are not employees.

As explained below, because Plaintiffs fail to plausibly allege the elements of employee status, the SAC should be dismissed.

## ARGUMENT

## I. Plaintiffs Fail to Plausibly Allege That They Had an Expectation of Compensation.

### A.   Plaintiffs fail to allege an expectation of compensation with sufficient factual detail.

Despite Plaintiffs' insistence that they "have no obligation to plead 'detailed factual allegations,'" (Br. at 5), Plaintiffs undoubtedly are bound by the plausibility pleading requirements set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Under *Twombly*, dismissal is appropriate where a complaint, as here, offers "'naked assertion[s]' devoid of further factual enhancement."  *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc*., 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Twombly*, 550 U.S. at 557) (alteration in original).  The entirety of Plaintiffs' allegations regarding their expectation of compensation appears to rest on the unsubstantiated inclusion of three words: "*in exchange for*."  In this respect, Plaintiffs allege that "workers understand and expect that, *in*

2

*exchange for* their labor, The Salvation Army will provide" room, board, clothing, rehabilitative services, and nominal wages. SAC ¶ 29; *see also* Br. at 10-11. But Plaintiffs remain unable to allege any factual support[1] for the generalized allegation that the work therapy component of their rehabilitation program was performed *in exchange for* such benefits. Despite Plaintiffs' rhetoric, the SAC says nothing of Plaintiffs' motivations for, or expectations upon, enrolling in the ARC – beyond a conclusory claim.[2] This Court is not required to accept Plaintiffs' naked, unsupported assertion that they *expected* to receive benefits *in exchange for* labor.

Even where they do allege specific facts, Plaintiffs' rhetorical conclusions are not "suggestive of, rather than merely consistent with, a finding of misconduct." *Pension Ben. Guar. Corp.,* 712 F.3d at 719 (citation and internal quotations omitted). For example, Plaintiffs argue that their allegation that Beneficiaries who were unable to work were removed from the program "confirms the bargained-for exchange[.]" Br. at 11. Plaintiffs' argument misses the mark. The question is *not* whether Plaintiffs understood they needed to engage in work to be in the program. That work therapy is a required element of the ARC program is undisputed. Rather, the central issue is whether the provision of room and board was *expected* to be provided *as compensation for* work therapy (*i.e.,* a *quid pro quo* arrangement), or instead, offered as part of a holistic spiritually-

---

[1] While Plaintiffs "certainly do not need to plead citations for their factual assertions," (Br. at 5), they do need to provide sufficient supporting detail to render such assertions plausible with a finding of misconduct by Defendants. *See E.E.O.C. v. Port Auth. of N.Y. & N.J.,* 768 F.3d 247, 253 (2d Cir. 2014) ("*Twombly* and *Iqbal* require that a complaint support the viability of its claims by pleading sufficient nonconclusory factual matter to set forth a claim that is plausible on its face."). They fail to do so.

[2] In footnote 9 of their opposition brief, Plaintiffs appear to misunderstand the New York Corporation's opening memorandum (Def's Mem. of Law ("Memo"), ECF No. 87). The New York Corporation acknowledges the SAC's repeated references to work therapy being performed "in exchange for" certain benefits. But, as explained herein, such allegations are not plausible without further factual support because the mere fact that ARC Beneficiaries were also provided with basic necessities does not suggest a *quid pro quo* arrangement. As the New York Corporation explained (Memo at 13), Plaintiffs do not allege that *they were told*, or had any other reason to believe, that such benefits were provided as compensation for their work.

based program focused on rehabilitation.  Because nothing in the SAC speaks to that issue, Plaintiffs' argument cannot save the SAC's insufficient allegations of an expectation of compensation.

> **B.**     **As in *Strickland*, Plaintiffs received no implied or express compensation as a component of their pursuit of their own rehabilitation.**

The SAC nowhere alleges that Plaintiffs were subject to an express compensation agreement.  Instead, Plaintiffs argue that they had "an implied agreement for in-kind compensation" (Br. at 14).  These arguments fail for several reasons.

*First*, Plaintiffs misread both the facts and holding of *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290 (1985).  As the New York Corporation has explained (Memo at 11), and as the Ninth Circuit recognized in *Strickland* (87 F.3d at 1068), the limited duration of the ARC program (typically, 180 days) is qualitatively different from the "complete dependence" for "long periods, in some cases several years" found in *Alamo*.[3]  *Alamo*, 471 U.S. at 301 (internal citations omitted).

*Second*, as the Ninth Circuit correctly found in *Strickland*, the fact that ARC Beneficiaries are required to turn over Supplemental Nutrition Assistance Program ("SNAP") benefits to TSA, SAC ¶ 56, "strongly counsels against a holding that [Plaintiffs] received the in-kind benefits in exchange for [their] work" and instead suggests that "these benefits were given to [Plaintiffs] to enable [them] to pursue [their] rehabilitation[.]"  *Id.* at 1067.  That the defendant's costs were not

---

[3] The New York Corporation does not, as Plaintiffs claim, "assert[] that the *Alamo* plaintiffs' work occurred *only* after they had completed their rehabilitation" (Br. at 17, n.13 (emphasis added)), but rather that it continued *indefinitely* after such rehabilitation had been completed (Memo at 11-12).  This fact differentiates *Alamo* from the instant case, in which work therapy is limited to the period of rehabilitation.  Plaintiffs attempt to distinguish *Strickland* by alleging that here, Plaintiffs' work did not "primarily further [their] rehabilitation."  Br. at 19 (alteration in original).  Setting aside that the Ninth Circuit found otherwise under the same program and facts in *Strickland*, the Ninth Circuit's reasoning still applies: the limited duration of the ARC program is materially different from the complete dependence on which the Supreme Court's decision relied in *Alamo*.

entirely "offset" (Br. at 19) is irrelevant.  There would be no reason for Plaintiffs to agree to turn over their food stamps to the ARC if they viewed food and other in-kind benefits as compensation owed to them in exchange for work therapy.

*Third,* Plaintiffs' characterization of *Strickland* as involving "different parties, at a different stage of litigation, and a different factual record" (*id.* at 6), and their attempts to distinguish it (*id.* at 18-20), are misleading.  Even a cursory comparison of the facts in the SAC to the facts in *Strickland* makes evident that the programs are indistinguishable.  *Compare* SAC ¶ 1 (alleging that individuals "who have drug or alcohol addiction problems" enroll in ARCs) *with Strickland*, 87 F.3d at 1065 (noting that Williams was seeking "help for drinking" problems); *compare* SAC ¶ 2 ("Typical tasks . . . include sorting donated clothing, . . . rehabilitating furniture") *with Strickland*, 87 F.3d at 1065 (Williams worked in a "furniture restoration shop refinishing furniture" and "sorted food and clothing donations"); *compare* SAC ¶ 3 (alleging that Plaintiffs received between $5 and $30 per week, as well as housing, food, clothing, and rehabilitative services) *with Strickland*, 87 F.3d at 1065 ("Williams received food, clothing, shelter, and a small stipend of seven to twenty dollars per week."); *compare* SAC ¶ 57 (alleging that ARC workers generally graduate from the program after 180 days, or are expelled from the program prior to completion) *with Strickland*, 87 F.3d at 1065 (noting that Williams attended the program "for approximately six months" and was "ultimately dismissed from the Center for drinking"); *compare* SAC ¶ 56 (Plaintiffs are required to "sign up for SNAP benefits . . . and then turn over the benefits to

Defendant") *with Strickland*, 87 F.3d at 1067 ("Williams was required to sign up for general assistance and food stamps and turn these benefits over").[4]

Plaintiffs recognize that these facts are true all around the country. Indeed, Plaintiffs' counsel filed identical lawsuits against the Eastern, Southern, and Central Territories of The Salvation Army raising the same status issue based on the same allegations. *Compare* FAC ¶¶ 1-8 *with* Declaration of Andrew W. Bagley ("Bagley Decl."), Ex. A, First Amended Complaint – Class and Collective Action ¶¶ 1-8, *Clancy v. The Salvation Army*, No. 1:22-cv-01250 (N.D. Ill. June 1, 2022), ECF No. 39; *and compare with* Bagley Decl., Ex. B, First Amended Complaint ¶¶ 1-8, *Alvear v. The Salvation Army*, No. 1:22-cv-00979 (N.D.G.A. June 1, 2022), ECF No. 39 (alleging nearly identical facts and claims). Plaintiffs' counsel also filed a substantially similar lawsuit under California state law. *See* Bagley Decl., Ex. C, Class Action Complaint, *Spillman v. The Salvation Army*, No. CGC-21-591354 (Cal. Super. Ct. May 7, 2021).[5]

---

[4] Plaintiffs' challenges to the Beneficiary Admittance Statements signed by ARC Beneficiaries (Br. at 13) are without merit. Notably, Plaintiffs do not deny signing the Beneficiary Admittance Statement. And although they avoided *explicitly* mentioning them in the SAC, signing the Beneficiary Admittance Statement was a crucial element of the "intake" process that Plaintiffs referenced being required to complete prior to enrolling in the program. SAC ¶ 32. Furthermore, Plaintiffs are incorrect that the Beneficiary Admittance Statements are "irrelevant." Br. at 12. The fact that Plaintiffs signed such a statement speaks directly to their understanding of the nature of the program and their lack of an expectation of compensation, which Plaintiffs concede is a relevant, if not determinative, factor in the analysis. *See id.* at 10 (describing "compensation expectations" as one of the two "inquiries" courts consider). Their citations prove nothing to the contrary. The plaintiffs in *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740 (1981) were undisputedly employees and thus undeniably *had* FLSA rights. *Marshall v. UBS Fin. Servs., Inc.*, No. 14 Cv 4384, 2015 WL 4095232, at *3 (S.D.N.Y. July 7, 2015) merely cites *Alamo*, which the New York Corporation has already addressed, and notes that under *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528 (2d Cir. 2016), expectation of compensation is "one factor to be taken into account" in determining whether an employment relationship exists. Finally, *Trejos v. Edita's Bar & Rest., Inc.*, No. CV-08-1477, 2009 WL 749891, at *2 (E.D.N.Y. Mar. 17, 2009) rejects consideration of subjective intent in determining whether workers were *independent contractors* or employees. These cases are far afield from the situation here, where there is a threshold question of whether participants who perform work therapy as part of a holistic rehabilitation program had an expectation of compensation. A signed agreement stating that they understand that they are "beneficiaries" and not "employees" is unquestionably relevant to their expectation, as the Ninth Circuit correctly found in *Strickland*. 87 F.3d at 1067.

[5] Defendant respectfully requests that the Court take judicial notice of the complaints filed in the ongoing actions in *Clancy*, *Alvear*, and *Spillman*. Bagley Decl., Exs. A-C. *See Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a complaint as a public record).

Despite this undeniable overlap, Plaintiffs suggest that comparing this case to *Strickland* is improper and that instead it is *Alamo* that is "on all fours."  Br. at 8.  But Plaintiffs' attempt to evade *Strickland* must fail — as shown above, these cases are virtually the same.  Plaintiffs do not explicitly argue that the analysis or outcome in *Strickland* is wrong, and any such implication should be rejected.  Not only does *Strickland* remain good law in the Ninth Circuit, it has been relied upon by other district and circuit courts deciding similar issues.  *See, e.g.*, *Fochtman v. Hendren Plastics, Inc.*, 47 F.4th 638, 644-45 (8th Cir. 2022).[6]

## II.  Plaintiffs Are the Primary Beneficiaries of the ARC Programs

As the New York Corporation explained in detail in its Memo (at 15-16), the factors of the primary beneficiary test confirm that Plaintiffs are the primary beneficiaries here, as in *Vaughn*. Plaintiffs argue that three factors differentiate this case from *Vaughn*: (1) Vaughn had no expectation of compensation; (2) Vaughn received the benefit of avoiding incarceration; and (3) Vaughn's work did not create a competitive advantage.  Each of these arguments fails.

*First*, as detailed in Section I above, Plaintiffs fail to plausibly allege an expectation of, or implied agreement for, in-kind compensation.  Indeed, if such an implied agreement did exist, it logically would have applied equally in *Vaughn*, as the plaintiff there *also* received in-kind benefits while dependent on the rehabilitation center at which he was required to perform work therapy; and moreover, as Plaintiffs argue, Vaughn's concession that he had no expectation of compensation should have had no bearing on whether an implied agreement existed.  Clearly, no

---

[6] Indeed, even Plaintiffs' supporting authority makes a point to distinguish the "solely rehabilitative" ARC program in *Strickland*.  Br. at 19 (citing *Perez v. TLC Residential, Inc.*, No. C 15-02776, 2016 WL 6143190, at *4 (N.D. Cal. Oct. 21, 2016) (distinguishing *Strickland* by stating that "'[j]ust because a "*solely* rehabilitative" . . . relationship in [*Strickland*] fell outside the scope of the FLSA does not mean that every alleged employer-employee relationship with any 'rehabilitative' element is similarly exempt.'")).  The Southern District of New York also relied on *Strickland* in *Vaughn v. Phoenix House Found., Inc.*, No. 14-CV-3918, 2019 WL 568012, at *5 (S.D.N.Y. Feb. 12, 2019) ("*Vaughn I*"), *aff'd sub nom. Vaughn II*, 957 F.3d 141 (2d Cir. 2020).

such implied agreement existed in *Vaughn*, just as none exists here.  As in *Vaughn*, this factor weighs heavily in favor of the New York Corporation.

*Second*, although the putative class here does not include Beneficiaries sentenced to rehabilitation in lieu of a jail sentence as in *Vaughn*, Beneficiaries still undoubtedly received "significant benefits," including, as the Second Circuit noted in *Vaughn II*, "food, a place to live, therapy, vocational training, and jobs that kept [them] busy and off drugs."  *Vaughn II*, 957 F.3d at 146 (citation omitted).  Plaintiffs' attempts to minimize the rehabilitative benefits of the work therapy program, *see, e.g.*, Br. at 4, are rooted in their failure to recognize the very premise of the program — that work therapy is *itself* a rehabilitative service.  Indeed, Beneficiaries' pursuit of rehabilitation, including through work therapy, is the "central purpose[] underlying th[e] relationship" between Beneficiaries and the New York Corporation.  *See Vaughn I*, 2019 WL 568012, at *5.  The Court need not credit Plaintiffs' conclusory allegation that their "menial" work "neither furthered their rehabilitation nor provided them with meaningful training."  Br. at 18-19.  *See also Vaughn I,* 2019 WL 568012, at *8 (disregarding similar allegations as implausible, noting that "the jobs [plaintiff] was assigned undoubtedly furthered the development of the skill of self-sufficiency").  As in *Vaughn*, this unsupported allegation does not alter the outcome of the primary beneficiary test.

*Third*, Plaintiffs argue that Factor Six (displacement of paid employees) weighs in their favor here, pointing to the revenue generated by the thrift stores as proof of the New York Corporation's unfair "advantage" over competitors.  *See* Br. at 15.  But they have omitted critical factual details, mischaracterizing the New York Corporation's thrift stores as merely revenue-generating commercial businesses distinct from the mission of the ARCs, when in fact they are, again, part and parcel of the charitable ARC program.  *See Salvation Army v. Town of Ellicott Bd.*

*of Assessment Rev.*, 100 A.D.2d 361, 364 (N.Y. App. Div. 1984) (noting that The Salvation Army's thrift store revenue is used to finance an ARC); *see also Ramirez v. The Salvation Army*, No. C06-0631, 2008 WL 670153, at *1 (N.D. Cal. Mar. 6, 2008) (describing ARC as "funded largely by" Salvation Army thrift stores).

Moreover, any revenue generation should be given less weight in a multi-factor test here, where the thrift stores "operate for the exclusive purpose" of providing rehabilitation. *See Vaughn II*, 957 F.3d at 146, n.22; *see also Town of Ellicott Bd. of Assessment Rev.*, 100 A.D.2d at 364 (the "essential use and purpose" of Salvation Army thrift store "is to provide meaningful work" to Beneficiaries).  In any event, even if this Court assumes that the New York Corporation benefits from lower labor costs because ARC workers displaced paid employees, this factor does not render the New York Corporation the primary beneficiary of the working relationship.  *See, e.g.*, *Vaughn II*, 957 F.3d at 146 (acknowledging that work performed by participants displaced paid employees but rejecting employment relationship); *Acosta v. Cathedral Buffet, Inc*., 887 F.3d 761, 764 (6th Cir. 2018) (same in church-owned restaurant).

Finally, taking a "holistic" view of the economic realities, there is no plausible argument that this case "involves the kind of employment relationship Congress had in mind when it enacted the FLSA." *Doyle v. City of N.Y.*, 91 F. Supp. 3d 480, 487 (S.D.N.Y. 2015) (citation omitted).  It defies reason to suggest that Congress intended to interfere with rehabilitation programs operated by long-established charitable organizations providing services and benefits to vulnerable populations.  And while Plaintiffs cite district court cases from outside the Second Circuit (or pre-

dating the primary beneficiary test set forth in *Glatt*[7]), the cases cited by the New York Corporation are circuit court cases, including one from this Circuit (*Vaughn II*), one involving the very same program at issue here (*Strickland),* and one issued just two months ago (*Fochtman*).  Based on this, it is clear that the weight of authority supports a finding that Plaintiffs are not employees.

### III.   The *Brock* Factors Are Not Applicable.

Plaintiffs' argument that the Court should apply principles set forth in *Brock v. Superior Care*, 840 F.2d 1054 (2d Cir. 1988), Br. at 21-22, is without merit because those factors are used to determine whether an individual is an employee or an independent contractor.[8]  In independent contractor cases, there is no dispute as to the *status* of the worker, because the worker is obviously working for the purpose of compensation.   The question is instead how the relationship is *classified*.  These factors do not resolve the question here, as they do not contemplate *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947), and the fact that the worker may in fact be working for his/her own personal purpose.  *See* Memo at 9, n.10 (discussing the inapplicability of the independent contractor test).

### CONCLUSION

For all of the above reasons, the New York Corporation respectfully requests that the Court dismiss the Second Amended Complaint with prejudice.

Date:  November 3, 2022

Respectfully Submitted,

*/s/ Sadina Montani*
Sadina Montani*
Thomas P. Gies

---

[7] *See, e.g.*, Br. at 10 (citing *Archie v. Grand Cent. P'ship, Inc*., 997 F. Supp. 504, 533 (S.D.N.Y. 1998) (Sotomayor, J.)).

[8] Plaintiffs appear to agree that *Brock* is not the applicable test. *See* Br. at 21 (stating that "*Alamo* squarely governs this case").

Andrew W. Bagley
Katie R. Aber
Rachel Lesser
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 624-2500
smontani@crowell.com
tgies@crowell.com
abagley@crowell.com
kaber@crowell.com
rlesser@crowell.com

*Attorneys for The Salvation Army, a New York
nonprofit corporation*

*\*Admitted pro hac vice*

1

DCACTIVE-70147600.1